**Salem**

COURTESY MOTORS, INC.

v.

FORD MOTOR COMPANY

No. 0648-85

Decided September 19, 1989

COUNSEL

W. T. Robey (Robey & Irvine, on brief), for appellant.

Joseph A. Ritok, Jr. (David F. Peters; Dykema, Gossett, Spencer, Goodnow & Trigg; Hunton & Williams, on brief), for appellee.

OPINION

COLE, J.—Courtesy Motors, Inc., (Courtesy) appeals from a decision by the Commissioner of the Division of Motor Vehicles allowing Ford Motor Company (Ford) to grant a franchise for a Ford dealership in Lexington, Virginia. Courtesy contends the decision should be reversed because: (1) the commissioner failed to apply the evidentiary standard required by Code § 46.1-547(d);[1] (2) the commissioner's decision was arbitrary and inconsistent with a prior decision; and (3) the commissioner's decision was not based upon substantial evidence. We disagree and affirm the decision.

Courtesy is a Ford dealership in Buena Vista, Virginia. A Ford dealership has been in continuous existence in Buena Vista since 1921. From 1945 to 1981, another Ford dealership also operated

---

[1] This statute is now Code § 46.1-550.5:27(4).

in Lexington, which is approximately six miles from Buena Vista and part of the same market area.[2]

In February 1989, Ford decided to grant a franchise for a new dealership in Lexington. Courtesy was offered the new dealership but did not accept. When Ford gave Courtesy written notice that it planned to grant the franchise to a third party, Courtesy objected on the ground that the market area would not support two dealerships.

Pursuant to Code § 46.1-547(d), a hearing officer appointed by a Commissioner of the Division of Motor Vehicles held a hearing on Courtesy's objection. Courtesy presented expert testimony indicating that the new automobile market in the Buena Vista-Lexington area was shrinking because of high unemployment, declining population in Lexington and a median family income below the state average. The expert testified that the addition of a second dealership to the market area would substantially reduce Courtesy's profitability.

Ford's evidence showed that the company's penetration of the new car market in the Buena Vista-Lexington area had been declining since 1977 and dropped sharply in 1982 and 1983 after the closing of the Lexington dealership. Though new car registrations increased by twenty and 18.4 percent in Lexington and Buena Vista, respectively, during 1983, Courtesy's new car sales decreased by 15.6 percent during the same year. Courtesy's new truck sales in 1983 increased by 47.1 percent, while new truck sales in Lexington and Buena Vista increased by 20.3 percent and 77.1 percent respectively. Courtesy's advertising expenditures have decreased steadily since 1978.

The hearing officer reported that the evidence was "insufficient to find that the market will not support all of the dealerships." Copies of the hearing officer's recommended decision, findings of fact, conclusions of law and "statement of reasons" submitted by counsel for each side were sent to the six members of the Motor Vehicle Dealers' Advisory Board for their review pursuant to Code § 46.1-550.1(B).[3] Each of the five board members who re-

---

[2] The commissioner's finding that Buena Vista and Lexington were in the same market area is not appealed by Courtesy.

[3] Now Code § 46.1-550.5:32(B).

sponded concurred in the hearing officer's recommendation. After consideration of the evidence produced at the hearing, the briefs and the board members' recommendations, the commissioner authorized Ford to grant the Lexington franchise. The Circuit Court of the City of Buena Vista affirmed his decision.

We reversed on the ground that the appointment of one member of the Motor Vehicle Dealers' Advisory Board violated Code § 46.1-550.2(b),[4] and therefore the commissioner had failed to obtain the recommendations of a lawfully constituted board. The Supreme Court overruled our decision, finding that the disqualification of one board member constituted harmless error. *See Ford Motor Co. v. Courtesy Motors*, 237 Va. 187, 375 S.E.2d 362 (1989). The case now returns to us for consideration of Courtesy's remaining assignments of error, which we did not previously address.

Courtesy first contends that the commissioner's decision was unlawful because he failed to apply the proper evidentiary standard. Code § 46.1-547(d) states:

[N]o such additional franchise may be established in the trade area unless the Commissioner has determined . . . that there is *reasonable evidence* that after the grant of the new franchise, the market will support all of the dealerships in that line-make in the trade area. (emphasis supplied).

In the second paragraph of the hearing decision, the commissioner states: "I have further decided . . . that Petitioner has failed to show reasonable evidence that after the grant of a new franchise in Lexington, Virginia, the market will not support both of the dealerships in that line-make in the trade area." The commissioner went on to incorporate most of the hearing officer's report, including a statement under the heading "Conclusions of Law" that "[t]he evidence presented by Courtesy Motors is insufficient to establish that after the grant of the new franchise, the market will not support all of the dealerships in that line-make in the trade area."

---

[4] This code section is now Code § 46.1-517.1; however, the clause requiring that no two board members be dealers of the same manufacturer has been eliminated by amendment. This clause was the basis of our decision that the board was not lawfully constituted since two Ford dealers were members.

Courtesy argues that, despite the commissioner's reference to the "reasonable evidence" standard in paragraph two of his decision, his reliance upon the hearing officer's report indicates that a sufficiency of the evidence standard was actually used to decide the case. We disagree. The hearing officer's findings and conclusion were recommendations. *See* Code § 9-6.14:12. The commissioner stated in his opinion that he had considered the evidence produced at the hearing, the briefs and the recommendations of the Motor Vehicle Dealers' Advisory Board members in determining that Courtesy "failed to show reasonable evidence" that the market would not support two dealerships. While the hearing officer failed to articulate the "reasonable evidence" standard, we are satisfied that the commissioner applied that standard in reaching his decision. His incorporation of the hearing officer's reference to insufficient evidence, while confusing, does not refute the other evidence in the opinion showing that he was fully aware of Courtesy's burden of proof.

██ Next, Courtesy asserts that the commissioner's decision was arbitrary because it was inconsistent with a former commissioner's decision in *P. D. Waugh & Co. v. American Motor Sales Corp.*, a 1976 case. At the outset, we note that in its ordinarily accepted meaning, the doctrine of *stare decisis* is inapplicable when applied to the decisions of an administrative agency. "An agency may refuse to follow its own precedent, but it must not act arbitrarily in doing so." C. Koch, *Administrative Law & Practice* § 6.57 (1985). Thus, the issue before us is not whether this case is or is not consistent with prior decisions of the commission or strictly speaking, distinguishable from earlier cases, but whether it is a departure and indistinguishable from decisions of the commission, and, if so, whether the commissioner acted arbitrarily in disregarding the precedent.

In *P. D. Waugh*, the commissioner prohibited American Motors from granting a second Jeep franchise in Orange, Virginia, on the ground that the market area would not support two dealerships. Courtesy contends that the facts in the present case are so similar to those in *P. D. Waugh* that the commissioner was bound to reach a similar decision. The record before us contains only a copy of the two page decision issued by the commissioner in *P. D. Waugh* and the published opinion in a federal court case which resulted from the administrative adjudication. *See American Mo-*

*tors Sales Corp. v. Division of Motor Vehicles*, 592 F.2d 219 (4th Cir. 1979). Without the complete record of *P. D. Waugh*, we have insufficient information upon which to conclude that the case is, in fact, indistinguishable. *See Walters v. Commonwealth*, 8 Va. App. 262, 266, 379 S.E.2d 749, 751 (1989). "There is no record here of what facts or issues were presented and decided by the court in the former case. They may have been different from those appearing here." *Id.* (quoting *Home Brewing Co. v. City of Richmond*, 181 Va. 793, 799, 27 S.E.2d 188, 191 (1943)).

Judging from the limited evidence available to us, however, the two cases differ in many ways. *P. D. Waugh* was decided in 1976, under economic conditions which differed greatly from those in existence at the time of these proceedings. Each case involved a different market area, with distinct problems and needs. Unemployment in Orange had risen sharply at the time *P. D. Waugh* was heard, but the previously high unemployment in Buena Vista/Lexington had declined when Courtesy objected to a new dealership. While the existing dealerships in the two cases may have been comparable in some ways, their business practices were not identical. For example, the dealer in *P. D. Waugh* advertised extensively, while Courtesy Motors sponsored only one weekly advertisement in a local newspaper. Based upon this record, we cannot conclude that the commission arbitrarily refused to follow its own precedent.

Courtesy's final argument is that the commissioner's decision was not based on substantial evidence. Code § 46.1-541 provided the standard of review for decisions under the Motor Vehicle Dealers' Licensing Act (the Act) at the time Courtesy's case was heard:

[T]he court shall affirm the adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that any finding of fact made by the Commissioner and necessary to support his adjudication is not supported by substantial evidence.

Similarly, Code § 9-6.14:17 states that on review,

the duty of the court with respect to issues of fact is limited to ascertaining whether there was substantial evidence in the

agency record upon which the agency as the trier of the facts could reasonably find them to be as it did.

"The phrase 'substantial evidence' refers to 'such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion.'" *Virginia Real Estate Comm'n v. Bias*, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he court may reject the agency's finding of fact 'only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion.'" *Bias*, 226 Va. at 269, 308 S.E.2d at 125 (quoting B. Mezines, *Administrative Law* § 51.01 (1981))(emphasis in original). This standard is designed "to give great stability and finality to the fact-findings of an administrative agency." *Bias*, 226 Va. at 269, 308 S.E.2d at 125.

Courtesy maintains that the commissioner's decision was not supported by substantial evidence because he relied in large part upon irrelevant evidence of Courtesy's sales performance in comparison with the potential for Ford sales in the market area.[5] We do not agree that this evidence was irrelevant. The issue posed by Code § 46.1-547(d) is whether the market area will support two Ford dealerships. Evidence that Courtesy has not fully penetrated the potential Ford market in the area is relevant to the question whether there was enough business to support two dealerships.

Courtesy also argues that much of the evidence produced by Ford was patently incredible, but we find nothing in the record to support this claim. The lone example Courtesy offers is Ford's projection that in 1984 Courtesy and the proposed new dealership could sell a combined total of 125 new Fords, a figure which Courtesy labels incredible because only eighty-three new Fords were registered in the market area in 1983. We do not find the projection unreasonable in light of other evidence showing that overall automobile sales for the trade area and the nation increased sharply during the first quarter of 1984.

---

[5] Courtesy claims that Ford's presentation of evidence demonstrating Courtesy's poor sales performance shows that Ford hopes to drive the dealership out of business by granting a second franchise. While Ford's hopes are not relevant to the issue at hand, we feel we must point out that Ford's first offer of the new dealership was to Courtesy itself. Only when Courtesy showed indifference did Ford offer the dealership to someone else.

Our review of the record reveals substantial relevant and credible evidence in support of the commissioner's conclusion. For this and other reasons stated in this opinion, the decision of the commissioner is affirmed.

*Affirmed.*

Koontz, C.J., and Keenan, J., concurred.