# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-3250

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

MYR GROUP, INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 02 CR 1205—**Elaine E. Bucklo**, *Judge.*

_____

ARGUED FEBRUARY 19, 2004—DECIDED MARCH 16, 2004

_____

Before CUDAHY, POSNER, and ROVNER, *Circuit Judges.*

POSNER, *Circuit Judge.* The district judge dismissed an indictment that charged MYR Group, Inc., with violating section 17(e) of the Occupational Safety and Health Act, 29 U.S.C. § 666(e), and the government appeals. The factual record is limited to the facts alleged in the indictment, according to which: MYR has a wholly owned subsidiary named L.E. Myers Company (the parties call it "LEM"), which repairs high-voltage lines. MYR oversees the safety programs of its subsidiaries, provides safety manuals and other safety instructions to the employees of the subsidiaries

and jointly with the subsidiaries is responsible for training those employees with regard to safety matters, including how to repair high-voltage lines without being electrocuted. Nevertheless, on two separate occasions, employees of LEM were electrocuted while repairing such lines. The indictment charges both MYR and LEM with two counts of causing the death of an employee by willfully violating rules promulgated under OSHA. 29 U.S.C. § 666(e). MYR is charged with violating regulations requiring, in essence, that employees be properly trained in safe working procedures. 29 C.F.R. §§ 1910.269(a)(2)(i), (ii). LEM is charged with violations of other rules as well, and is awaiting trial in the district court.

The government's argument is a simple one. MYR is an employer, albeit not of the two workers who were electrocuted; the two workers were employees; the regulations in question state simply that "employees shall be trained in" safe working procedures. Therefore, the argument concludes, the duties created by the regulations run to anyone's employees, not merely employees of the employer accused of having violated the regulations.

In its opening brief the government tried to make something of the fact that MYR and LEM are corporate affiliates, citing *Esmark, Inc. v. NLRB*, 887 F.2d 739 (7th Cir. 1989). That, however, was a veil-piercing case, where we said that "it is solely where a parent disregards the separate legal personality of its subsidiary (and the subsidiary's own decisionmaking 'paraphernalia'), and exercises direct control over a specific transaction, that derivative liability for the subsidiary's unfair labor practices will be imposed under the theory adopted by the Board in the present case." *Id.* at 757. At argument the government made clear that it is not attempting to pierce the corporate veil and by doing so attribute the subsidiary's acts to the parent, consistent with the principles of corporate law.

Breathtaking vistas of both criminal and civil liability (the latter not dependent on proof that the violation was willful, 29 U.S.C. §§ 666(b), (c); *S.A. Healy Co. v. OSHRC*, 138 F.3d 686, 688 (7th Cir. 1998)) open before our eyes. Were LEM to hire the Illinois Institute of Technology to train LEM's employees in the hazards of uninsulated high-voltage electrical cables, and IIT fell down on the job and an employee of LEM was electrocuted as a result, IIT would, if the government is right, be either criminally or civilly liable for having violated OSHA. It would be so merely by virtue of having employees, even though those were not the workers endangered by its violation. It is true that LEM and IIT are not affiliates, but the government's lawyer acknowledged that this would make no difference, for remember that it is not arguing that MYR did anything that would justify treating LEM as if it were really just a division of MYR rather than a separate corporation.

The government's argument is not limited to service providers. A firm (provided only that it had employees) that sold a defective espresso machine to a coffee shop would be subject to OSHA liability if the machine exploded and scalded a waiter. OSHA would become a products-liability statute—with criminal sanctions for its willful violation.

The government points to our decision in *United States v. Pitt-Des Moines, Inc.*, 168 F.3d 976, 984-85 (7th Cir. 1999), which holds that a contractor at a construction site can be prosecuted under section 666(e) if by violating an OSHA regulation he causes the death of an employee of another contractor at the same site. However, the point of this "multi-employer" gloss (cf. *Universal Construction Co. v. OSHRC*, 182 F.3d 726, 728-30 (10th Cir. 1999); *R.P. Carbone Construction Co. v. OSHRC*, 166 F.3d 815, 818 (6th Cir. 1998); *Beatty Equipment Leasing, Inc. v. Secretary of Labor*, 577 F.2d 534, 536-37 (9th Cir. 1978); *Marshall v. Knutson Construction*

*Co.*, 566 F.2d 596, 599-600 (8th Cir. 1977) (per curiam); *Brennan v. OSHRC*, 513 F.2d 1032, 1037-39 (2d Cir. 1975); but see *Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706, 710-11 (5th Cir. 1981)) is that since the contractor is subject to OSHA's regulations of safety in construction by virtue of being engaged in the construction business, and has to comply with those regulations in order to protect his own workers at the site, it is sensible to think of him as assuming the same duty to the other workers at the site who might be injured or killed if he violated the regulations. From a safety standpoint, it is a joint-employment case. A crane operator might be killed because the contractor responsible for leveling the ground at the worksite violated a regulation requiring that the surface beneath the crane be planed smooth, and a bulldozer driver might be killed when a crane fell on him because the crane contractor had failed to comply with regulations governing the safe operation of cranes. Each employer at the worksite controls a part of the dangerous activities occurring at the site and is the logical person to be made responsible for protecting everyone at the site from the dangers that are within his power to control. See *Universal Construction Co. v. OSHRC*, *supra*, 182 F.3d at 730; *Brennan v. OSHRC*, *supra*, 513 F.2d at 1038. This case is not like that. No employee of MYR was engaged in repairing high-voltage lines, any more than a professor of electrical engineering at IIT who trained employees in the hazards of electricity would be present at the worksite.

The government's attempt to stretch the statute by filing a criminal indictment is especially questionable. Surely the proper way to proceed, if the government really thinks the statute can be stretched this far, would be to amend the regulations to bring the third-party case under them. And who by the way is "the government" in this case? No representative of the Occupational Safety and Health Administration, or for that matter anyone outside the office

of the U.S. Attorney for this district, signed the government's brief. The Solicitor General of the United States had to approve the appeal, 28 C.F.R. § 0.20(b); but we have not even been told whether OSHA approves, or for that matter knows of, the extension of liability urged by the U.S. Attorney!

The dismissal of the indictment against the MYR Group is

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*