COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Fitzpatrick, Judges Elder and Kelsey
Argued at Richmond, Virginia

C. RAY DAVENPORT, COMMISSIONER,
  DEPARTMENT OF LABOR AND INDUSTRY
                                                    OPINION BY
v.        Record No. 1643-04-2              JUDGE D. ARTHUR KELSEY
                                                    MAY 3, 2005
SUMMIT CONTRACTORS, INC.,
  d/b/a SCI, CORP.

                FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                              T. J. Hauler, Judge

            Catherina F. Hutchins, Assistant Attorney General (Jerry W.
            Kilgore, Attorney General, on briefs), for appellant.

            Robert E. Rader, Jr. (D. Stan Barnhill; Rader & Campbell;
            Woods Rogers PLC, on brief), for appellee.


        The Virginia Occupational and Safety Health Program (VOSH) issued civil penalty

citations to Summit Contractors, Inc., alleging violations of the Virginia Occupational Safety and

Health Act, Code § 40.1-1 *et seq.* (VOSHA).  When Summit contested the citations, VOSH filed

an enforcement action in circuit court pursuant to Code § 40.1-49.4(E).  At Summit's request, the

circuit court entered a summary judgment order dismissing the case.  Finding no error in this

decision, we affirm.

                                            I.

        Summit acted as a general contractor at an apartment project in Chester, Virginia.

Summit subcontracted the siding work to Sunbelt Contractors, Inc., to install exterior siding on

the apartment buildings.  VOSH agents inspected the siding worksite and found four "serious

violations" of OSHA Standards for the Construction Industry, 16 Va. Admin. Code

§ 25-175-1926, which incorporates various provisions of 29 C.F.R. § 1926.  The citations

asserted that Sunbelt failed to provide its employees with hard hats and with fall protection while

on overhead working platforms.[1]  Though Summit's employees either had hardhats or did not need them and did not work on the overhead platforms, VOSH issued civil penalties both to Summit and Sunbelt.  Summit contested the citations, arguing that they should be asserted only against Sunbelt.

In response, VOSH filed an enforcement action against Summit pursuant to Code § 40.1-49.4(E), which authorizes the circuit court to "issue a written order, based on findings of fact and conclusions of law, affirming, modifying or vacating" the proposed VOSHA citation. During the litigation, the parties exchanged requests for admissions establishing:

- At the time of VOSH's inspection, Summit had only two employees on the project, a superintendent and an assistant superintendent.

- Summit created none of the worksite conditions involved in the citations.  All were created by Sunbelt.

- Sunbelt was in the best position to correct the violative conditions.

- No Summit employee was exposed to the violative conditions.

- VOSH cited Summit under the agency's "multi-employer citation policy" contained in its "Field Operations Manual."  Summit would not have been cited "but for" this administrative policy.

- The "multi-employer citation policy" has not been promulgated as a rule or regulation pursuant to the Virginia Administrative Process Act, Code § 2.2-4000 *et seq*.

Relying on these admissions, Summit moved the court to enter summary judgment dismissing the civil penalty action as a matter of law.  The statute, Summit argued, did not authorize VOSH to issue citations to general contractors for worksite conditions caused by subcontractors.  The agency's internal guidance policy, Summit concluded, could not create

---

[1] Specifically, VOSH cited Summit for violations of 29 C.F.R. §§ 1926.100(a) (requiring hard hats), 1926.451(g)(1)(vii) (requiring guardrails for scaffolds), 1926.501(b)(1) (requiring guardrails for stair landings), and 1926.1052(c) (requiring guardrails for stairs).  Sunbelt was cited for the same, and other, violations.

authority where it did not already exist by statute. The circuit court agreed and entered summary judgment dismissing the action.[2] VOSH now appeals, seeking a reinstatement of the penalty action on the circuit court's docket for a hearing on the merits. See Code § 40.1-49.5.

## II.

This case presents the question whether a general contractor can be held liable under the VOSHA for a subcontractor's failure to protect its own employees. If such authority exists, it must be rooted either in the text of the statute or in agency regulations properly promulgated under the statute. We find it in neither.

### A. VOSHA & THE ROLE OF FEDERAL LAW

In 1970, Congress passed the Occupational Safety and Health Act, 29 U.S.C. § 651 *et seq.* The Act permits states to regulate worker safety by developing and enforcing their own worker safety laws so long as they are at least as stringent as the federal statute. See 29 U.S.C. § 667(c)(2). Virginia adopted its own set of worker safety laws in 1972. See 1972 Va. Acts, chs. 567, 602. Drawing from nearly identical language in 29 U.S.C. § 654(a), Virginia's statute provides:

> It shall be the duty of every employer to furnish to each of his employees safe employment and a place of employment which is free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees, and to comply with all applicable occupational safety and health rules and regulations promulgated under this title.

Code § 40.1-51.1(A). The VOSHA also gives employees a statutory right to "bring to the attention of *their* employer any hazardous conditions that exist" or to report the suspected hazard

---

[2] Summit also argued that the action should be dismissed on laches grounds because VOSH waited over two years to bring the circuit court action. Given our holding, we need not address this issue.

directly to VOSH.  Code § 40.1-51.2(b) (emphasis added).  The emphasis on the employer-employee relationship parallels similar provisions of the federal regulations.  See, e.g., 29 C.F.R. § 1910.12(a) ("Each employer shall protect the employment and places of employment of *each of his employees* engaged in construction work by complying with the appropriate standards prescribed in this paragraph." (emphasis added)).

The Virginia Safety and Health Codes Board adopted most, but not all, of the federal Construction Industry Standards, 29 C.F.R. § 1926 *et seq*.  See Code § 40.1-22(5); 16 Va. Admin. Code § 25-175-1926.[3]  Each of the citations in this case involves one of the incorporated federal standards.  One requires all employees to wear hard hats.  See 29 C.F.R. § 1926.100(a). The other three require employers to provide handrails or other forms of fall protection for employees working on elevated work platforms.  See 29 C.F.R. §§ 1926.451(g)(1)(vii), 1926.501(b)(1), 1926.1052(c).

Not included among the provisions adopted into Virginia law, however, were subparts A and B of 29 C.F.R. Part 1926.[4]  One of those omitted provisions, 29 C.F.R. § 1926.16(b), states that "the prime contractor assumes all obligations prescribed as employer obligations under the standards contained in this part, whether or not he subcontracts any part of the work."[5]  Nothing

---

[3] The Virginia "state plan" assumed OSHA authority to regulate occupational safety and health within its jurisdiction for the general industry, construction, agriculture, and public sector categories.  Federal OSHA retains authority over maritime and longshoring industries, the mining industry, federal government workers in Virginia, federal government enclaves in Virginia, and any other industries regulated by other federal agencies.

[4] See Virginia Occupational Safety & Health Standards for the Construction Industry, preface ¶ 1 (with amendments as of November 1, 1993) (noting that the Board "adopted the Construction Industry Standards as contained in this volume, except for Subpart A, Subpart B, Part 1926.30, and Part 1926.32(a), (e), (i), (j) and (n)").

[5] This provision, along with all of subparts A and B, address public works contracts governed by the Contract Work Hours and Safety Standards Act (CWHSS Act), 40 U.S.C. § 327 *et seq*.  See generally 29 C.F.R. §§ 1910.12(c), 1926.1, 1926.10.  The CWHSS Act predated the OSHA and applies to federally funded contracts for construction described at 29 C.F.R.

similar to this provision was incorporated by reference into Virginia law. Nor did the Board promulgate any regulations addressing the relationship between a general contractor and the employees of a subcontractor.

### B. SUMMIT'S LIABILITY FOR SUNBELT'S VOSHA VIOLATIONS

We "begin, as always, with the language of the statute." Meador v. Va. Birth-Related Neurological Injury Comp. Program, 44 Va. App. 149, 153, 604 S.E.2d 88, 90 (2004) (citations omitted). Like the federal statute, Code § 40.1-51.1(A) requires an employer to provide a safe place to work for "each of his employees." It then adds that the employer, without reference to his specific employees, must also comply with all applicable "rules and regulations promulgated under this title." Id.

Read together, these provisions suggest that VOSHA duties — once breached by an employer to his own employees — may extend to any other employee on the same worksite if the applicable safety rule or regulation contemplates such reach. A carpentry contractor, for example, must comply with VOSHA ladder standards to protect his carpenters from the risk of falling off a dangerous ladder. But he can still be liable if his unsafe ladders endanger a crew of painters employed by someone else at the same worksite. As one court explains the point,

> since the contractor is subject to OSHA's regulations of safety in construction by virtue of being engaged in the construction business, and has to comply with those regulations in order to protect his own workers at the site, it is sensible to think of him as assuming the same duty to the other workers at the site who might be injured or killed if he violated the regulations. From a safety standpoint, it is a joint-employment case. . . . Each employer at the worksite controls a part of the dangerous activities occurring at the site and is the logical person to be made responsible for protecting everyone at the site from the dangers that are within his power to control.

---

§ 1926.10. When Congress passed OSHA, it included at 29 U.S.C. § 653(b)(2) as part of OSHA the standards previously promulgated pursuant to the CWHSS Act.

United States v. MYR Group, Inc., 361 F.3d 364, 366 (7th Cir. 2004) (citations omitted).  Thus, properly understood, this "doctrine only seeks to hold liable those employers who actually create hazardous situations by violating safety standards."  United States v. Pitt-Des Moines, Inc., 168 F.3d 976, 984 (7th Cir. 1999); see also MYR Group, Inc., 361 F.3d at 367 (finding doctrine inapplicable where no employee of the cited employer was "engaged" in the work subject to the violative condition).

Without some statutory basis for doing so, this joint-employment concept cannot be judicially extended to an employer who neither creates the worksite hazard nor allows his employees to be exposed to it.  To impute OSHA violations under these circumstances is simply to adopt a form of vicarious statutory liability.  True, the legislature can do exactly that when distributing statutory duties between a general and a subcontractor.  See, e.g., Code § 65.2-302(B) (deeming a "statutory" employer, for purposes of workers' compensation liability, any general contractor that contracts with a subcontractor to perform all or part of the general's "trade, business or occupation").  The General Assembly, however, included no such provision in the VOSHA.

Despite the absence of any textual support in the statute, VOSH contends a general contractor in control of a worksite *should be* held liable under tort principles for a subcontractor's VOSHA violations.  In its internal "guidance documents" and "field operation manuals," VOSH applies a "reasonable care standard" that imputes the subcontractor's violation to the general when the latter fails to exercise ordinary care to inspect the worksite and to remedy any violations found.  Only when general contractors "know or should have known" of the subcontractor's default, VOSH reasons, should the general be held liable for the subcontractor's statutory violation.

In its most recent description of this administrative policy, VOSH Program Directive 02-102 (Feb. 2000), VOSH concedes that the policy "is an internal guideline, not a statutory or regulatory rule" and "is not being enforced as having the force of law." See generally Code § 2.2-4001 (defining a guidance document as merely an agency's effort to "interpret or implement" statutes, rules, or regulations within its administrative responsibility).[6] Not subject to the scrutiny associated with promulgated regulations, agency guidelines "do not purport to be a substitute for the statute." Jackson v. W., 14 Va. App. 391, 399, 419 S.E.2d 385, 389 (1992).[7]

We have no quarrel with the policy judgments underlying VOSH's finely balanced treatment of general contractors and its admixture of both statutory and common law principles to achieve the goal of worker safety. Our only objection is that not a word of it can be found in the VOSHA or any "rules and regulations promulgated under this title." Code § 40.1-51.1(A). None of these promulgated "rules and regulations" address the liability interplay between general and subcontractors, much less the imputation of a subcontractor's statutory defaults to a general contractor under a tort-based reasonable care standard. And the only federal regulation addressing the subject of general contractor liability for subcontractor defaults, 29 C.F.R.

---

[6] VOSH's policy tracks the prevailing federal administrative view, despite its somewhat "checkered history." IBP, Inc. v. Herman, 144 F.3d 861, 866 n.3 (D.C. Cir. 1998). See generally Southeast Contractors, Inc. v. Dunlop, 512 F.2d 675, 675 (5th Cir. 1975) (*per curiam*) (noting the view of OSHA Commission Chairman that "a contractor is not responsible for the acts of his subcontractors or their employees"); Brennan v. Gilles & Cotting, Inc., 504 F.2d 1255, 1257 (4th Cir. 1974) (affirming OSHA Commission's initial rejection of doctrine as a basis for holding a general contractor responsible when two employees of its subcontractor were killed in a scaffolding collapse).

[7] Our reasoning does not rely on any preclusive effect of VOSH's admission that it "cited Summit under VOSH's multi-employer citation policy set forth in VOSH's Field Operations Manual" and would not have issued the citations "but for" this policy. Thus we need not address VOSH's argument that the circuit court misinterpreted these admissions as a concession that neither the statute nor the regulations supported the internal policy.

§ 1926.16(b), was specifically omitted from the list of regulations incorporated into Virginia law.[8]

### III.

In sum, no provision of the VOSHA or any state administrative regulation promulgated under it authorizes the imposition of civil penalty liability on a general contractor for a subcontractor's violations of safety standards causing risk of harm only to the subcontractor's employees. Given the uncontested facts before the circuit court, we find no error in its decision to enter summary judgment dismissing VOSH's enforcement action against Summit.

Affirmed.

---

[8] We are aware that, to maintain federal OSHA approval, the VOSHA program standard must be "at least as effective as" the federal standard. See 29 C.F.R. § 1902.37(b)(4). Even so, 29 C.F.R. § 1926.16(b) applies only to the CWHSS. See *supra* n.5. Due to the absence of any express OSHA provision or regulation, the federal courts have struggled to reach a principled consensus on whether general contractors have vicarious liability for violations committed by their subcontractors. Some courts reject the underlying principle altogether. Melerine v. Avondale Shipyards, Inc., 659 F.2d 706 (Former 5th Cir. Oct. 1981); Southeast Contractors, Inc., 512 F.2d at 675. Others question it. MYR Group, Inc., 361 F.3d at 366 (referring to the doctrine as a statutory "gloss"); IBP, Inc., 144 F.3d at 866 n.3; Anthony Crane Rental, Inc. v. Reich, 70 F.3d 1298, 1306 (D.C. Cir. 1995). Still others find it an acceptable example of agency lawmaking within the interstices of an ambiguous statutory scheme. Universal Constr. Co., Inc. v. OSHRC, 182 F.3d 726, 728 (10th Cir. 1999); Teal v. E.I. DuPont de Nemours & Co., 728 F.2d 799, 804 (6th Cir. 1984); Brennan v. OSHRC, 513 F.2d 1032, 1038 (2d Cir. 1975) — though most of these courts overlook the fact that, in their cases, the party held liable *actually created* the worksite hazard, e.g., Teal, 728 F.2d at 801; Brennan, 513 F.2d at 1039.