COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Humphreys and Haley
Argued at Salem, Virginia


NRV REAL ESTATE, LLC

                                                                    OPINION BY
v.        Record No. 0904-07-3                          JUDGE JAMES W. HALEY, JR.
                                                                    APRIL 15, 2008
VIRGINIA DEPARTMENT OF HEALTH


FROM THE CIRCUIT COURT OF ROANOKE COUNTY
William N. Alexander, II, Judge Designate

Dominic P. Madigan (Thomas W. McCandlish; McCandlish Holton,
P.C., on briefs), for appellant.

Matthew M. Cobb, Assistant Attorney General (Robert F.
McDonnell, Attorney General; David E. Johnson, Deputy Attorney
General; Jane D. Hickey, Senior Assistant Attorney General, on
brief), for appellee.

I.  INTRODUCTION

NRV Real Estate, LLC ("NRV") appeals the order of the Circuit Court of Roanoke

County dismissing NRV's appeal from the decision of the Department of Health ("the agency")

to not accept NRV's application for a Certificate of Public Need ("COPN") to transfer nursing

home beds.  The circuit court held the agency lacked statutory authority to permit the transfer.

On appeal, NRV argues the agency has such statutory authority, has exercised this power in the

past by permitting transfers, and acted arbitrarily and capriciously in this case by disregarding its

prior precedent.  We agree with NRV and reverse and remand to the circuit court with

instructions to remand to the agency with instructions to accept the application and to reconcile

its conflicting precedent.

II.  FACTS

A succinct summary of relevant statutes is necessary to develop the continuum of facts.

To preclude overdevelopment of medical care facilities, an entity seeking to establish *new* medical care facilities must file an application for a COPN with the agency and demonstrate a public need for those facilities.  Code § 32.1-102.3.  After considering twenty statutory criteria, the agency determines if such a need exists, and, if concluding it does, issues a COPN.  Id.  A nursing home is a medical care facility.  Code § 32.1-102.1.[1]

The agency may not accept applications for a COPN "for any project which would result in an *increase in the number of beds . . . in which nursing facility . . . services are provided*" unless such application is in response to a Request for Applications ("RFA") issued by the Commissioner of Health for the same.  Code § 32.1-102.3:2(A) (emphasis added).  No such RFA was outstanding in this cause.

Code § 32.1-102.1 includes in the definition of a "project" requiring a COPN: "5.  Introduction into an existing medical facility of any new [here follows a list of specifically defined medical exploratory devices or procedures, and facilities for substance abuse or psychiatric treatment] . . . *which the facility . . . has not provided in the previous 12 months.*" (Emphasis added).  Thus, the quoted language permits an existing medical facility to cease offering any of the designated services, but return to offering those services without seeking a new COPN, if they do so within twelve months of the cessation.  The exception is generally referred to as the twelve-month rule.  Nursing home services, including supplying nursing home beds, are *not* one of the services designated in Code § 32.1-102.1.

---

[1] For purposes of administration by the agency, the Commonwealth of Virginia is geographically divided into Planning Districts.  The two medical facilities involved in this cause are both located in then Planning District Four.

With this statutory foundation the following constitutes the relevant facts.

By letter dated June 28, 2004, Carilion Giles Memorial Hospital ("Giles Memorial") advised the agency that effective September 24, 2004, it would cease operations as "an immediate care nursing home." The letter further noted that nursing home residents had been advised of this cessation and that those "residents and families . . . have already begun placement proceeding[s] in other nursing homes." Giles Memorial possessed twenty-one beds that had been certified for Medicaid reimbursement as nursing home beds, and were employed as such.

On September 20, 2004, Giles Memorial entered into an agreement with NRV to relocate the twenty-one nursing home beds from Giles Memorial to the Radford Nursing and Rehabilitation Center ("Radford Nursing"), owned by NRV. In accordance with the agreement, on September 24, 2004, Giles Memorial ceased offering nursing home beds and de-certified the twenty-one beds from Medicaid nursing home reimbursement. Both Giles Memorial and Radford Nursing are in Planning District Four. The twenty-one beds used as nursing home beds were included in Giles Memorial's COPN as inventory in Planning District Four.[2]

On August 1, 2005, NRV filed an application for a COPN seeking approval of the relocation of the twenty-one beds from Giles Memorial to Radford Nursing. By letter dated August 11, 2005, the Director of the Division of Certificate of Public Need replied. Citing Code § 32.1-102.3:2(A), he declined to accept the application "because execution of the proposed project would constitute an addition to the supply of nursing home beds in PD 4" in violation of the statute, since there was no existing RFA for nursing home beds in the Planning District. Further, he wrote:

_____

[2] In numbered paragraph three of its demurrer to the appeal noted by NRV to the circuit court, the agency stated: "Carilion Giles had operated 21 nursing home beds pursuant to its COPN until it ceased operation of the nursing home beds on September 24, 2004."

Although your application seems to imply that Giles Memorial has 21 nursing home beds available to be relocated, Giles Memorial does not now have such beds. Giles Memorial has never had nursing home beds, per se, but it did have 21 hospital beds certified for Medicaid nursing facility ("NF") reimbursement until September 24, 2004 on which date these NF beds were de-certified pursuant to the hospital's request. Since September 24, 2004, Giles Memorial has not had any beds that qualify as nursing home beds within the meaning of the statute governing the certificate of public need program.

Since January 1, 2005, Giles Memorial has been licensed for a total of 25 beds, which it identifies as 22 medical/surgical beds and three intensive care unit beds. Therefore, Giles Memorial does not have "nursing home" beds that could be relocated pursuant to a certificate of public need . . . .

. . . Unless you can show that . . . the application . . . does not seek to increase the supply of nursing home beds in PD 4, we will return . . . the application to you.

Counsel for NRV replied, and by letter dated September 12, 2005, the Director merely reiterated his reliance upon Code § 32.1-102.3:2(A) and declined to receive the application.[3]

NVR appealed the Director's decision to the Circuit Court of Roanoke County. Their petition maintained that their application would not add nursing home beds to PD 4 inventory, that prior agency decisions had applied the twelve-month rule to the relocation of nursing home beds from one medical care facility to another, and that the agency's departure from those earlier decisions, without notice or explanation, was arbitrary and capricious.

By order entered March 20, 2007, the trial court held: (1) that because nursing homes and nursing home beds were not designated as one of the medical services set forth in paragraph five of the definition of "project" in Code § 32.1-102.1, the twelve-month rule did not apply, and (2) that because the application "seeks to add nursing home beds to the planning district" in the

_____

[3] The Director did not include in this response his earlier reference to the character or status of the beds contained in the Giles Memorial COPN.

- 4 -

absence of a RFA, the Director properly declined the application based upon Code § 32.1-102.3:2(A). This appeal followed.

## III. ANALYSIS

### A. <u>Standard of Review</u>

Under well-settled principles, the party appealing an administrative decision bears the burden of demonstrating error. Code § 2.2-4027; <u>Loudoun Hosp. Ctr. v. Stroube</u>, 50 Va. App. 478, 490, 650 S.E.2d 879, 885 (2007). We review the agency's factual findings only to determine whether substantial evidence exists to support the agency decision. <u>Tidewater Psychiatric Inst., Inc. v. Buttery</u>, 8 Va. App. 380, 386, 382 S.E.2d 288, 291 (1989). Substantial evidence is only "'such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion.'" <u>Va. Real Estate Comm'n v. Bias</u>, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983) (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). This deferential standard provides that "the court may reject the agency's findings of fact 'only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion.'" <u>Id.</u> (quoting B. Mezines, <u>Administrative Law</u> § 51.01 (1981)). On the other hand, where the question concerns an issue of law that is "'outside the area generally entrusted to the agency, and is one in which the courts have a special competence, i.e., the common law or constitutional law, there is little reason for the judiciary to defer to an administrative interpretation.'" <u>Johnston-Willis, Ltd. v. Kenley</u>, 6 Va. App. 231, 243-44, 369 S.E.2d 1, 8 (1988) (quoting <u>Hi-Craft Clothing Co. v. NLRB</u>, 660 F.2d 910, 915 (3d Cir. 1981)). Yet "where the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts." <u>Id.</u> at 244, 369 S.E.2d at 8. In that case we will reverse where the agency takes "'arbitrary or capricious action that constitutes a clear abuse of the delegated

discretion.'" Id. (quoting Va. Alcoholic Beverage Control Comm'n v. York Street Inn, Inc., 220 Va. 310, 315, 257 S.E.2d 851, 855 (1979)).

### B. Whether the Agency Has Statutory Authority to Apply the Twelve-Month Rule to Nursing Homes

We first examine whether the agency has statutory authority to apply the twelve-month rule to nursing homes. It is well established that if the agency lacks statutory authority to apply the twelve-month rule, any administrative action to the contrary is invalid. General Motors Corp. v. Dep't of Taxation, 268 Va. 289, 293, 602 S.E.2d 123, 125 (2004). "The question whether an agency decision making body acted within the scope of the authority conferred upon it by statute is a question of law." Muse v. Virginia Alcoholic Beverage Control Bd., 9 Va. App. 74, 78, 384 S.E.2d 110, 112 (1989). Thus, we do not defer to the agency's judgment. Alliance to Save the Mattaponi v. Commonwealth, 270 Va. 423, 442, 621 S.E.2d 78, 88 (2005) (stating that "a pure question of statutory interpretation" receives *de novo* review in the courts).

"Under basic rules of statutory construction, we examine the statute in its entirety, rather than by isolating particular words or phrases." Earley v. Landsidle, 257 Va. 365, 369, 514 S.E.2d 153, 155 (1999). We discern the intention of the General Assembly "from the words appearing in the statute, unless a literal construction of the statute would yield an absurd result." Cummings v. Fulghum, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001). When the statutory language is clear, "we are bound by the plain meaning of that language." Vaughn, Inc. v. Beck, 262 Va. 673, 677, 554 S.E.2d 88, 90 (2001).

The Code provides that "[n]o person shall commence any project without first obtaining a certificate issued by the Commissioner." Code § 32.1-102.3(A). The Code defines a project in part as follows:

> Introduction into an existing medical care facility of any
> new cardiac catheterization, computed tomographic (CT) scanning,
> gamma knife surgery, lithotripsy, magnetic resonance imaging

> (MRI), magnetic source imaging (MSI), medical rehabilitation, neonatal special care, obstetrical, open heart surgery, positron emission tomographic (PET) scanning, psychiatric, organ or tissue transplant service, radiation therapy, nuclear medicine imaging, except for the purpose of nuclear cardiac imaging, substance abuse treatment, or such other specialty clinical services as may be designated by the Board by regulation, which the facility has never provided or has not provided in the previous 12 months[.]

Code § 32.1-102.1. Thus, the Code provides that where a health care facility ceases to provide one of the above-enumerated services, it may resume operation of that service within one year from the date of discontinuance. Id.

Under the statutory interpretation principle of *expressio unius est exclusio alterius*, the "'mention of a specific item in a statute implies that omitted items were not intended to be included within the scope of the statute.'" GEICO v. Hall, 260 Va. 349, 355, 533 S.E.2d 615, 617 (2000) (quoting Turner v. Sheldon D. Wexler, D.P.M., P.C., 244 Va. 124, 127, 418 S.E.2d 886, 887 (1992)). The Virginia Supreme Court has firmly established the principle in our jurisprudence. See, e.g., Belton v. Crudup, 273 Va. 368, 373, 641 S.E.2d 74, 77 (2007) (holding that where the General Assembly specifies several exceptions to a rule, no others exist); Jackson v. Fid. & Deposit Co., 269 Va. 303, 313, 608 S.E.2d 901, 906 (2005) (holding that "because the statute specifically lists exceptions . . . those exceptions are the only ones allowed by law"). Here, Code § 32.1-102.1 plainly lists where the twelve-month rule applies. Therefore, these represent the only areas where the twelve-month rule must apply.

Nevertheless, this does not mean the Code prohibits the agency from applying the twelve-month rule or variations thereof to other areas by virtue of its administrative powers. Otherwise, a nursing home facility would need to obtain a COPN after any cessation of service since resumption of the activity would present a "new nursing home service" and thereby a project requiring a COPN. Code § 32.1-102.1. Holding that any cessation of service in nursing home beds necessitates a new COPN would produce an impermissibly absurd result. Cummings,

261 Va. at 77, 540 S.E.2d at 496. Any closure for renovation or even cleaning, however temporary, would require a facility to obtain a new COPN. Furthermore, Code § 32.1-102.1 provides that "[r]elocation at the same site of 10 beds or 10 percent of the beds, whichever is less, from one existing physical facility to another in any two year period" does not constitute a project. The relocation of beds would almost certainly mean closing their active use temporarily. Yet the Code permits a provider to accomplish this without the need for a COPN and without application of the twelve-month rule. Therefore, we find that although the twelve-month rule does not necessarily apply to nursing homes, the Code does not prohibit its application as a matter of administrative discretion.

### C. Whether the Agency Acted Arbitrarily and Capriciously by Violating Its Own Precedent

The fact that the agency may apply a rule does not mean it must. NRV contends the agency used the twelve-month rule in prior administrative adjudications and contends the agency's sudden decision to depart from that rule in this case constitutes impermissible arbitrary and capricious conduct.

We have held that an agency "has incidental powers which are reasonably implied as a necessary incident to its expressly granted powers for accomplishing [its] purposes." Bader v. Norfolk Redev. & Housing Auth., 10 Va. App. 697, 702, 396 S.E.2d 141, 144 (1990). This includes the adoption of interpretative rules. Id. Since such rules do not undergo the same scrutiny as do formally promulgated regulations, they "'do not purport to be a substitute for the statute.'" Davenport v. Summit Contractors, Inc., 45 Va. App. 526, 533, 612 S.E.2d 239, 243 (2005) (quoting Jackson v. W., 14 Va. App. 391, 399, 419 S.E.2d 385, 389 (1992)); see also Woods v. Commonwealth, 26 Va. App. 450, 457, 495 S.E.2d 505, 508 (1998). "[T]hey do not have the force of law." Jackson, 14 Va. App. at 399, 419 S.E.2d at 389. In spite of this, interpretative rules carry persuasive effect. Bader, 10 Va. App. at 702, 396 S.E.2d at 144. We

give "great deference to an administrative agency's interpretation of the regulations it is responsible for enforcing," Hilliards v. Jackson, 28 Va. App. 475, 479, 506 S.E.2d 547, 550 (1998), for "it is inappropriate for a court to second-guess the manner in which an agency responds to its responsibility of carrying out the Commonwealth's policy when those means are not prohibited," Jackson, 14 Va. App. at 401, 419 S.E.2d at 390.

The Code refers to interpretative rules of agencies as guidance documents. Code § 2.2-4001 (defining a guidance document). These documents are publicly available. Code § 2.2-4008. Importantly for this case, Bader, Jackson, Woods, and Davenport all involved written interpretative rules. Davenport, 45 Va. App. at 532, 612 S.E.2d at 243; Woods, 26 Va. App. at 458, 495 S.E.2d at 509; Jackson, 14 Va. App. at 399, 419 S.E.2d at 389-90; Bader, 10 Va. App. at 701, 396 S.E.2d at 143. The interpretative rule is not simply a logic consistently employed by an agency in administrative adjudication.

The reasoning of agencies in administrative adjudications receives great deference in this Court. We stated the standard for evaluating whether an agency erred in declining to follow its internal precedent in Courtesy Motors, Inc. v. Ford Motor Co., 9 Va. App. 102, 384 S.E.2d 118 (1989). We held:

> At the outset, we note that in its ordinarily accepted meaning, the doctrine of *stare decisis* is inapplicable when applied to the decisions of an administrative agency. "An agency may refuse to follow its own precedent, but it must not act arbitrarily in doing so." C. Koch, Administrative Law & Practice § 6.57 (1985). Thus, the issue before us is not whether this case is or is not consistent with prior decisions of the commission or strictly speaking, distinguishable from earlier cases, but whether it is a departure and indistinguishable from decisions of the commission,

and, if so, whether the commission acted arbitrarily in disregarding the precedent.

Id. at 106, 384 S.E.2d at 120-21.[4]

In the present case, the record contains no evidence of a formal interpretative twelve-month rule utilized by the agency. However, NRV submitted evidence of prior administrative cases it claims the agency decided on grounds opposed to those used to decide its case. We therefore evaluate these cases under the standards of Courtesy Motors enunciated above.

The agency declined to accept NRV's application because under the agency's interpretation of the law, transferring beds from Giles Memorial to Radford Nursing would represent an increase in the number of nursing home beds, which could only occur in response to a RFA from the agency. The parties agree that new beds may only be added after such a Request; the disagreement surrounds whether the transfer would result in "new" beds. The agency concluded that when Giles Memorial de-certified the beds to be transferred from Medicaid nursing facility reimbursement on September 24, 2004, the beds ceased to exist. Thus, when the agency received NRV's application to transfer the beds on August 1, 2005, no beds existed. This logic followed a two-step process: (1) beds not covered by Medicaid do not exist, and (2) beds that do not exist may not be transferred. The narrow basis for the agency's decision accordingly limits the relevant similarities from other cases. First Va. Bank v. Commonwealth, 213 Va. 349, 351, 193 S.E.2d 4, 5-6 (1972) (stating that "where the Commission has reached the

---

[4] The minimal role of *stare decisis* in the administrative law context has been widely acknowledged by other courts. See, e.g., Interstate Tel. Coop., Inc. v. Pub. Utils. Comm'n, 518 N.W.2d 749, 752 (S.D. 1994) (noting many courts have found "that administrative agencies are not bound by *stare decisis*"); Zinke & Trumbo, Ltd. v. State Corp. Comm'n, 749 P.2d 21, 29 (Kan. 1988) (stating that *stare decisis* does not generally apply to administrative actions); Baltimore Gas & Elec. Co. v. Pub. Serv. Comm'n, 501 A.2d 1307, 1318 (Md. 1986) (noting that "the principle of *stare decisis* has limited applicability to administrative agencies").

right result for the wrong reason, its decision, unlike that of a trial court, will not be permitted to stand").

Prior decisions of the agency support NRV's argument. First, in <u>Montgomery Health Investors</u>, the agency approved a proposal to transfer beds from a facility that had not participated in Medicaid for two years. This rebuts the agency's holding that beds not covered by Medicaid do not exist.[5] Also relevant is the <u>Albemarle Health Investors</u> decision. There a company proposed to build a new nursing home and supply beds through relocation of beds from the recently closed Jefferson Park nursing facility. When the agency evaluated whether to authorize the transfer, it stated:

> Jefferson Park is a non-operational nursing home and adult residence facility, licensed for 173 nursing home beds . . . . Absent some change in the status of Jefferson Park, it will remain a licensed nursing home until July 19, 2001, one year from the date on which the Virginia Department of Health was notified that nursing home patient services had ceased to be provided at Jefferson Park.
>
> Further, absent some change, such as proposed in this COPN application, the nursing home beds now at Jefferson Park will be de-licensed effective July 19, 2001, and will be removed from the inventory of authorized nursing home beds. However, if a COPN is issued for some relocation and re-use of these beds prior to July 19, 2001, the beds will remain part of the authorized inventory of nursing home beds . . . .

The agency clearly took the position nursing homes could transfer beds one year from their date of closure.

These decisions show the agency previously held a prior position directly contrary to its position in this case. Stated succinctly, it did not require Medicaid participation as a condition of nursing home status and permitted closed nursing homes to transfer beds within a year of

---

[5] The Code appears to provide nursing homes do not have to participate in Medicaid. <u>See</u> Code §§ 32.1-27.1(B); 32.1-123; 32.1-325(E). Given the nature of our remand, we do not reach this question.

closure.[6]  We now consider whether the agency acted arbitrarily in disregarding its prior precedent.

Agencies act arbitrarily and capriciously when they engage in actions that "are 'willful and unreasonable' and taken 'without consideration or in disregard of facts or law or without determining principle.'"  Sch. Bd. of the City of Norfolk v. Wescott, 254 Va. 218, 224, 492 S.E.2d 146, 150 (1997) (quoting Black's Law Dictionary 105 (6th ed. 1990)).  Arbitrary and capricious actions represent a plain abuse of discretion.  Bd. of Zoning Appeals v. Glasser Bros. Corp., 242 Va. 197, 200, 408 S.E.2d 895, 897 (1991).

The United States Supreme Court has stated that "[a]djudicated cases may and do . . . serve as vehicles for the formulation of agency policies, which are applied and announced therein.  They generally provide a guide to action that the agency may be expected to take in

---

[6] Other administrative cases cited by NRV also held transfers of beds permissible.  These cases may all be distinguished within the meaning of Courtesy Motors on the ground that the transfers were approved before the other facility closed.  Yet they do provide additional evidence that the agency did not consider a transfer of beds to create new beds.

In Windsor Health Investors, a company proposed to build a new facility with ninety-four nursing home beds.  Those beds would come from another facility.  Regarding the law concerning whether the transfer was permissible, the agency held:

> The project would be implemented in conjunction with a 94 bed reduction in the licensed bed capacity of Park View Nursing and Rehabilitation Center . . . . (Projects which would increase the total number of beds in PD 20 cannot be reviewed or authorized by the Commissioner of Health, under current Virginia law . . . because the Commissioner has not issued a Request for Applications for new nursing home beds which targets PD 20.)

> Thus, WHI is, in essence, proposing to "relocate" these within PD 20.

The agency recommended approval of the transfer.  Hence, after acknowledging that it could only approve new beds after a RFA, the agency determined transferred beds were not new.  A very similar situation occurred in the Kings Daughters Health Investors case.  In that case, a company proposed to replace an existing nursing home by buying the rights to its beds and constructing a new facility.  Again, the agency issued a COPN.  Beds were also relocated in the Woodstock Health Investors and Lexington Health Investors cases.

- 12 -

future cases." NLRB v. Wyman-Gordon Co., 394 U.S. 759, 765-66 (1969) (plurality opinion) (citation omitted). It has further held an agency "is not precluded from announcing new principles in an adjudicative proceeding and that the choice between rulemaking and adjudication lies in the first instance within the [agency's] discretion." NLRB v. Bell Aerospace Co., 416 U.S. 267, 294 (1974). Yet the Court warned that where an agency deviates from its precedent there could be "adverse consequences ensuing from such reliance [that] are so substantial that the [agency] should be precluded from reconsidering the issue in an adjudicate proceeding." Id. at 295. Such situations could result where "new liability is sought to be imposed on individuals for past actions which were taken in good-faith reliance on [agency] pronouncements." Id.; see also Ruangswang v. INS, 591 F.2d 39, 44 (9th Cir. 1978). They could also occur where the agency announces a "[s]udden and unexplained change" or "does not take account of legitimate reliance on prior interpretation." Smiley v. Citibank (S.D.), N.A., 517 U.S. 735, 742 (1996); see also United States v. Deaton, 332 F.3d 698, 712 (4th Cir. 2003), cert. denied, 541 U.S. 972 (2004); Boyd v. People, Inc., 43 Va. App. 82, 91, 596 S.E.2d 100, 105 (2004) (Kelsey, J., concurring). Yet "if these pitfalls are avoided, change is not invalidating," for the courts "leave the discretion provided by the ambiguities of a statute with the implementing agency." Smiley, 517 U.S. at 742; see also Sacco v. Dep't of Justice, 317 F.3d 1384, 1386 (Fed. Cir. 2003) (stating a court should uphold an agency's policy change where "the agency is able to provide a reasonable justification").

In order for a court to know whether an agency has adequately considered its prior precedent before announcing a change, the agency must provide reasons for its decision. The Code provides for this requirement by mandating the agency "briefly state or recommend the findings, conclusions, reasons, or basis thereof upon the evidence presented by the record and relevant to the basic law under which the agency is operating." Code § 2.2-4020; see also

Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 384, 363 S.E.2d 433, 438 (1987).  As

the United States Supreme Court held:

> If the administrative action is to be tested by the basis upon which
> it purports to rest, that basis must be set forth with such clarity as
> to be understandable.  It will not do for a court to be compelled to
> guess at the theory underlying the agency's action; nor can a court
> be expected to chisel that which must be precise from what the
> agency has left vague and indecisive.

SEC v. Chenery Corp., 332 U.S. 194, 196-97 (1947); see also Massachusetts v. EPA 127 S. Ct.

1438, 1463 (2007) (holding the EPA acted arbitrarily and capriciously when it "offered no

reasonable explanation for its refusal to decide whether greenhouse gases cause or contribute to

climate change"); Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 48

(1983) (noting that "[w]e have frequently reiterated that an agency must cogently explain why it

has exercised its discretion in a given manner").

An agency's unexplained change from prior decisions may render its decision arbitrary

and capricious.  Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 981

(2005); see also Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade, 412 U.S. 800,

808 (1973) (plurality opinion) (stating that an agency's "ground for the departure from prior

norms . . . must be clearly set forth so that the reviewing court may understand the basis of the

agency's action and so may judge the consistency of that action with the agency's mandate").

As one lower federal court stated:

> Our review . . . is highly deferential, but agency action is arbitrary
> and capricious if it departs from agency precedent without
> explanation.  Agencies are free to change course as their expertise
> and experience may suggest or require, but when they do so they
> must provide a "reasoned analysis indicating that prior policies and
> standards are being deliberately changed, not casually ignored."
> An agency's failure to come to grips with conflicting precedent
> constitutes "an inexcusable departure from the essential
> requirement of reasoned decision making."

- 14 -

Ramaprakash v. FAA, 346 F.3d 1121, 1124-25 (D.C. Cir. 2003) (citations omitted). Another court noted that while "an agency is free to change course after reweighing the competing statutory policies . . . such a flip-flop must be accompanied by a reasoned explanation of why the new rule effectuates the statute as well as or better than the old rule." N.Y. Council, Ass'n of Civilian Technicians v. Fed. Labor Relations Auth., 757 F.2d 502, 508 (2d Cir.), cert. denied, 474 U.S. 846 (1985).

In the present case, the agency provided NRV no reasons for its departure from its prior practice of considering nursing homes licensed and capable of transferring beds for twelve months after operations cease. The agency's first opinion simply stated that since Giles Memorial de-certified the beds from the Medicaid program, they no longer existed and therefore could not be transferred. Even after counsel for NRV wrote the agency and set forth in detail NRV's position that the beds continued to exist, the agency did not provide further reasoning. Rather, the agency's September 12, 2005 letter summarily confirmed the first letter. The lack of any reasoning explaining the departure from prior practice can only be considered arbitrary and capricious. Ramaprakash, 346 F.3d at 1124-25; Boyd, 43 Va. App. at 92, 596 S.E.2d at 105 (Kelsey, J., concurring) (criticizing the Workers' Compensation Commission for failing to distinguish its prior precedent and stating that "[i]t is one thing for the commission to change its mind, but quite another to be double-minded. The former may or may not be arbitrary . . . . The latter, however, almost certainly is."); id. at 96-97, 596 S.E.2d at 107 (Benton, J., dissenting) (finding a decision arbitrary and capricious because it "fails to explain this deviation from its earlier interpretation; therefore, it demonstrates a lack of thoroughness in its consideration of the issues, evinces little validity in its reasoning, and lacks persuasiveness").

Having found the agency's decision in this case arbitrary and capricious, we must determine the remedy available to NRV. The Code provides that where an agency decision "is

found by the court not to be in accordance with law . . . the court shall suspend or set it aside and remand the matter to the agency for further proceedings, if any, as the court may permit or direct in accordance with law." Code § 2.2-4029. In a recent opinion by Justice Alito, the United States Supreme Court stated that where a court finds agency action arbitrary and capricious due to internally inconsistent logic, remand for clarification of the agency's reasoning represents the proper remedy. Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 127 S. Ct. 2518, 2529 (2007); see also Fla. Light & Power Co. v. Lorion, 470 U.S. 729, 744 (1985) (holding that "if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional . . . explanation"). Likewise, in an opinion by then Judge Alito, the court held that where an agency decided a case contrary to its prior precedent, the proper remedy was remand "so that it can reconcile the contradictory case law that it has developed." Stardyne, Inc. v. NLRB, 41 F.3d 141, 153 (3d Cir. 1994). Remand for additional agency explanation is the settled remedy when an agency arbitrarily disregards its past precedent. See, e.g., Fox TV Stations, Inc. v. FCC, 489 F.3d 444, 467 (2d Cir. 2007); Exxon Mobil Corp. v. FERC, 315 F.3d 306, 311 (D.C. Cir. 2003); City of Fort Morgan v. FERC, 181 F.3d 1155, 1162-63 (10th Cir. 1999); ANR Pipeline Co. v. FERC, 71 F.3d 897, 904 (D.C. Cir. 1995).

Since the agency failed to explain its rationale for departing from its prior precedent, we remand to the circuit court with instructions to remand to the agency with instructions to accept the application and to "state . . . the findings, conclusions, reasons, or basis thereof . . . relevant to the basic law under which the agency is operating," as required by Code § 2.2-4020. Harrison v. Ocean View Fishing Pier, LLC, 50 Va. App. 556, 576, 651 S.E.2d 421, 431 (2007). Upon remand, the agency should give a sufficient resolution of its conflicting precedent to permit

judicial review.  Although NRV complains the agency did not give it a hearing, such a hearing was unnecessary, for the law "specifically contemplates judicial review on the basis of the agency record compiled in the course of informal agency action in which a hearing has not occurred."  Fla. Light & Power Co., 470 U.S. at 744.  Except for ensuring an adequate record exists for judicial review and as otherwise constitutionally required, courts have no power to impose procedures on agencies not provided by law.  Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 655-56 (1990).

For the foregoing reasons, we reverse and remand to the circuit court with instructions to remand to the agency.

Reversed and remanded.