Present: Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and Goodwyn, JJ., and Russell, S.J.

VIRGINIA DEPARTMENT OF HEALTH

v.  Record No. 081174                   OPINION BY
                                  SENIOR JUSTICE CHARLES S. RUSSELL
NRV REAL ESTATE, LLC                    June 4, 2009

FROM THE COURT OF APPEALS OF VIRGINIA


This appeal arises out of a dispute between the Virginia Department of Health (VDH) and a medical care facility concerning the facility's right to operate nursing home beds. It involves the interpretation of statutes relating to health care planning.

### Facts and Proceedings

The essential facts are undisputed and the appeal presents a pure question of law. Carilion Giles Memorial Hospital (Giles) operated 46 beds licensed by VDH. Of those beds, 22 were licensed as "medical/surgical" beds, three as intensive care beds and the remaining 21 were certified for reimbursement by the Medicaid program as nursing facility beds.

On June 28, 2004, Giles informed VDH that it intended to cease operations as an intermediate-care nursing home effective September 24, 2004. Giles also notified Medicaid of its intentions and its 21 Medicaid reimbursement nursing

facility beds were "de-certified" and "de-licensed" effective September 24, 2004.

NRV Real Estate, LLC (NRV) was the owner of a nursing home in Radford known as Radford Nursing and Rehabilitation Center (Radford Nursing). On September 20, 2004, four days before Giles' cessation of operations as a nursing home was to become effective, Giles entered into an agreement with NRV to "relocate" its 21 nursing home beds from Giles to Radford Nursing.

On August 1, 2005, NRV filed an application with VDH for a Certificate of Public Need (COPN) to approve the relocation of the 21 nursing home beds from Giles to Radford Nursing. The director of the VDH division concerned with COPN applications replied by letter, declining to accept the application on the ground that "execution of the proposed project would constitute an addition to the supply of nursing home beds in PD [Planning District] 4," citing Code § 32.1-102.3:2(A).

In 1982, the General Assembly adopted a comprehensive statutory system of health care planning laws, replacing former statutes, to ensure that the development of health care facilities would meet the needs of the public. See 1982 Acts ch. 388. Under this system, Code § 32.1-102.3(A) provides, in pertinent part, that "[n]o person shall commence any project"

2

without obtaining a COPN from the State Health Commissioner. The definition of "Project" includes any increase in the total number of nursing home beds in an existing medical care facility. Code § 32.1-102.1. The Commissioner may only accept or approve an application for a COPN that would result in an increase in the number of nursing home beds within the planning district in which the project is located, if the application is in response to "Requests for Applications" issued by the Commissioner. Code § 32.1-102.3:2(A). It is undisputed that Radford Nursing is located in Planning District 4, as designated by the Commissioner, and that no "Request for Applications" had been issued for additional nursing home beds in that district at the time of NRV's application.

The director's letter issued by VDH, refusing to accept NRV's application, stated:

> Although your application seems to imply that Giles Memorial has 21 nursing home beds available to be relocated, Giles Memorial does not now have such beds. Giles Memorial has never had nursing home beds, per se, but it did have 21 hospital beds certified for Medicaid nursing facility ("NF") reimbursement until September 24, 2004, on which date those NF beds were de-certified pursuant to the hospital's request. Since September 24, 2004, Giles Memorial has not had any beds that qualify as nursing home beds within the meaning of the statute governing the certificate of public need program.

VDH followed that letter by a formal refusal to accept the application on the ground that it would result in an increase of nursing home beds in Planning District 4, in violation of Code § 32.1-102.3:2(A).  NRV appealed the decision to the Circuit Court of Roanoke County.  VDH filed a motion to dismiss NRV's petition for appeal on legal grounds, there being no issues of fact to be tried.  The circuit court, by opinion and order, granted the motion to dismiss the appeal, agreeing with the position taken by VDH.

NRV noted an appeal of right to the Court of Appeals, which, by a unanimous panel opinion entered April 15, 2008, reversed the judgment of the circuit court and remanded the case.  NRV Real Estate, LLC v. Virginia Dep't of Health, 51 Va. App. 514, 519-20, 659 S.E.2d 527, 530 (2008).  The Court of Appeals denied a petition for rehearing en banc and we awarded VDH an appeal.

## Analysis

The appeal presents a pure question of statutory interpretation.  We review such questions de novo. Commonwealth v. Barker, 275 Va. 529, 536, 659 S.E.2d 502, 504 (2008).  Although decisions by administrative agencies are given deference when they fall within an area of the agency's specialized competence, issues of statutory interpretation

4

fall outside those areas and are not entitled to deference on judicial review.  Id. at 536, 659 S.E.2d at 505.

The dispositive question presented by VDH is whether it was precluded by Code § 32.1-103:2(A) from accepting NRV's application, as the circuit court held, or whether NRV's application was exempted from the effect of that section by the "twelve-month rule" provided by Code § 32.1-102.1.

Code § 32.1-102.1 defines certain terms used in the relevant statutes.  The definition of "Project" contains eight parts, one of which reads:

> (5) Introduction into an existing medical care facility of any new cardiac catheterization, computed tomographic (CT) scanning, gamma knife surgery, lithotripsy, magnetic resonance imaging (MRI), magnetic source imaging (MSI), medical rehabilitation, neonatal special care, obstetrical, open heart surgery, positron emission tomographic (PET) scanning, psychiatric, organ or tissue transplant service, radiation therapy, nuclear medicine imaging, except for the purpose of nuclear cardiac imaging, substance abuse treatment or such other specialty clinical services as may be designated by the Board by regulation, which the facility has never provided or has not provided in the previous 12 months[.]

(Emphasis added.)

VDH argues that if an activity is contained in the above-quoted list, or is a specialty clinical service added to that list by a regulation adopted by the State Board of Health, that activity will have the benefit of the "twelve-month rule."  Thus, VDH continues, such an activity may be relocated

5

to another facility without obtaining a new COPN, if the relocating facility has provided the same services within the past twelve months, because such a relocation would not be a "Project" as defined in Code § 32.1-102.1. Conversely, VDH contends, an activity not contained in the above-quoted statutory list, or added thereto by regulation, is a "Project" and thus does not have the benefit of the "twelve-month rule." Any "Project" must obtain a new COPN before it may be commenced by any person. The Commissioner of Public Health is precluded by Code § 32.1-102.3(A) from issuing a COPN "unless the Commissioner has determined that a public need for the project has been demonstrated."

Furthermore, VDH points out, Code § 32.1-102.3:2 specifically forbids the Commissioner to accept an application for a COPN that would have the effect of increasing the total number of nursing home beds in a planning district unless the Commissioner has first issued a Request for Applications therefor. Id.

VDH concludes that because (1) there was no Request for Applications pending in the planning district, (2) granting NRV's application would result in an increase in the number of nursing home beds in the planning district, (3) nursing home beds were not included in the list of activities entitled to the benefit of the "twelve-month rule," and (4) no regulation

6

had added them to that list, then the acceptance of NRV's application was explicitly prohibited by law. The circuit court agreed with that analysis.

In its appeal to the Court of Appeals, NRV cited several cases in which VDH had, in the past, applied the "twelve-month rule" to approve the relocation of nursing home beds.[1] In its opinion, the Court of Appeals noted that VDH had not, in this case, explained its departure from its own precedent and, citing federal cases, held that unexplained change of position to be arbitrary and capricious. NRV Real Estate, 51 Va. App. at 533-34, 659 S.E.2d at 537. The Court of Appeals also observed that VDH's position "that any cessation of service in nursing home beds necessitates a new COPN would produce an impermissibly absurd result." Id. at 526, 659 S.E.2d at 533. The Court's opinion stated: "Any closure for renovation or even cleaning, however temporary, would require a facility to obtain a new COPN." Id. The Court also observed: "[t]he fact that the agency may apply a rule does not mean it must . . . . [A]n agency 'has incidental powers which are reasonably implied as a necessary incident to its expressly granted powers for accomplishing [its] purposes.' " Id. (citation omitted).

---

[1] Because the applicants in those cases were successful, the cases were not subjected to judicial review.

We do not agree with the Court of Appeals' analysis. An administrative agency's implied and incidental powers do not extend to a violation of unambiguous statutory language. When statutory language is clear and unambiguous, a court is bound by the plain meaning of that language. Cummings v. Fulghum 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001). Neither the trial court, the Court of Appeals nor this Court have discerned any ambiguity in the statutes under consideration.

The list of services entitled to the benefit of the "twelve-month rule" by Code § 32.1-102.1 does not include nursing home beds. In interpreting statutory language, we have consistently applied the time-honored principle expressio unius est exclusio alterius. That rule recognizes the competence of the legislature to choose its words with care. In applying it, we hold that the mention of specific items in a statute implies that all items omitted were not intended to be included. GEICO v. Hall, 260 Va. 349, 355, 533 S.E.2d 615, 617 (2000). "[B]ecause [a] statute specifically lists exceptions . . . , those exceptions are the only ones allowed by law." Jackson v. Fidelity & Deposit Co., 269 Va. 303, 313, 608 S.E.2d 901, 906 (2005).

We do not share the concern of the Court of Appeals that applying the statutes as written would necessarily lead to an "impermissibly absurd result." In another definitional

8

section of Code § 32.1-102.1, subdivision (3) of the definition of "Project," the Legislature has made express provision for the relocation of a limited number of beds in a nursing home to another physical facility at the same site for a period of up to two years without the requirement of a new COPN.[2]

Finally, we do not agree that VDH acted arbitrarily in applying the statutes as written. Erroneous statutory interpretations an administrative agency may have adopted in the past can never cause the subsequent adoption of a correct application of the law to be arbitrary and capricious. If an agency has acted in error, it has no obligation to continue to err in perpetuity.

When the decision of an administrative agency is challenged as arbitrary, judicial interference is permissible only for relief against arbitrary or capricious action that constitutes a clear abuse of the discretion delegated to the agency. Virginia ABC Comm'n v. York St. Inn, 220 Va. 310, 315, 257 S.E.2d 851, 855 (1979); Board of Zoning Appeals v. Fowler, 201 Va. 942, 948, 114 S.E.2d 753, 758 (1960). The only discretion delegated to VDH by law in this context was to

---

[2] We apply the term "absurd result" to describe a situation in which a law would be "internally inconsistent or otherwise incapable of operation." Cook v. Commonwealth, 268 Va. 111, 116, 597 S.E.2d 84, 87 (2004).

9

add, or refrain from adding, nursing home beds to the list of services entitled to the benefit of the "twelve-month rule" by adopting a regulation to that effect, a process requiring public hearing after notice.  VDH exercised its discretion in that respect by refraining from adopting such a regulation. At the time NRV submitted its application, VDH, confronted by a clear statutory prohibition, had no discretion in the matter.

## Conclusion

For the reasons stated, we conclude that VDH acted in compliance with the applicable statutes in declining to accept NRV's application.  Because we agree with the analysis made by the circuit court, we will reverse the judgment of the Court of Appeals, reinstate the judgment of the circuit court and enter final judgment here dismissing NRV's appeal.


Reversed and final judgment.