COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Humphreys and McClanahan
Argued by teleconference


COMMONWEALTH OF VIRGINIA,
  BOARD FOR CONTRACTORS
                                                  MEMORANDUM OPINION[*] BY
v.       Record No. 0921-10-3                JUDGE ELIZABETH A. McCLANAHAN
                                                       MARCH 22, 2011
MICHAEL GAVIGAN


                FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                              J. Leyburn Mosby, Judge

              Steven P. Jack, Assistant Attorney General (Kenneth T. Cuccinelli,
              II, Attorney General, on brief), for appellant.

              A. David Hawkins (Overbey, Hawkins & Wright, on brief), for
              appellee.


        In this administrative appeal, the Commonwealth of Virginia's Board for Contractors

(Board) challenges the order of the circuit court reversing the Board's decision to deny Michael

Gavigan's claim under the Virginia Contractor Transaction Recovery Act (CTRA), Code

§§ 54.1-1118 through -1127.  The CTRA provides a limited means for payment to a claimant on

an unsatisfied judgment against a licensed contractor, the "regulant," who has engaged in

"[i]mproper or dishonest conduct" in relation to a contract for residential construction.  Code

§ 54.1-1118.  Such payment is made from a fund administered by the Board, and is limited to

"actual monetary loss," along with attorney's fees and court costs, not to exceed a total of

$20,000, regardless of the amount of the claimant's unsatisfied judgment.  Code § 54.1-1123(A)

& (C).

───────────────

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The Board argues the trial court erred in reversing its denial of payment to Gavigan because his unsatisfied judgment—upon which he filed his CTRA claim for payment of damages and attorney's fees totaling $19,000—did not represent an award for "actual monetary loss," as required by Code § 54.1-1123, thus negating the judgment's compensability under the CTRA.[1] We disagree and affirm the circuit court's decision. Accordingly, we remand for the purpose of ordering the Board to pay Gavigan the sum of $19,000 on his CTRA claim.

## I. BACKGROUND

Gavigan entered into a written contract on March 2, 2006 with Larry Pippen, trading as "Affordable Home Repairs," for the construction of a basement apartment in Gavigan's Campbell County residence for the sum of $45,000. At that time, Pippen held a Class C contractor's license from the Board. After work under the contract began, Gavigan learned that Pippen needed a Class B contractor's license to do the construction, he became dissatisfied with Pippen's work, and he terminated the contract. Gavigan filed suit against Pippen in circuit court for Pippen's actions in relation to the contract.

In his complaint, Gavigan claimed Pippen's actions constituted fraud, breach of contract, and a violation of the Virginia Consumer Protection Act. Central to all of his claims were allegations that, "[a]s a direct result of defendant's poor workmanship and performance below building code requirements, plaintiff [was] required to remove, rework and replace at great expense much of what little defendant did accomplish" and that "[t]he defendant [had] not earned and [was] not entitled to the moneys advanced to him, and the defendant . . . failed and refuse[d] to return the plaintiff's money to him." Specifically as to his claim under the Virginia

---

[1] In his CTRA claim filed with the Board, Gavigan also sought payment for his award of court costs in his action against the licensed contractor, Larry Pippen, but Gavigan did not include court costs in his appeal to the circuit court. Rather, he limited his challenge on appeal to the Board's denial of payment on his award for actual damages and attorney's fees.

Consumer Protection Act (Code §§ 59.1-196 through -207), Gavigan alleged that "[d]efendant . . . misrepresent[ed] the nature and quality of the services offered to the plaintiff, knowingly and intentionally" and that "[p]laintiff . . . rel[ied] on such misrepresentations to his detriment and entered into a contract with the defendant that he never would have entered into absent the fraud proximately resulting in damage to the plaintiff."  Gavigan then stated in his request for relief:

> WHEREFORE, plaintiff prays that this Court find the Defendant in violation of the Virginia Consumer Protection Act, that the Defendant has committed actual fraud on the Plaintiff, that the Defendant has committed constructive fraud on the Plaintiff, that the Defendant breached his contract with the Plaintiff and that judgment be awarded him [sic] against the Defendant in the amount of $28,000.00, trebled as the law may allow to the sum of $84,000.00, his attorneys fees incurred herein and his costs incurred, all bearing interest from August 2, 2006 at the judgment rate.  Plaintiff also prays that this Court find such actions by the Defendant as described herein constitute "improper or dishonest conduct" as defined in Section 54.1-1118 of the Code of Virginia.[2]

The circuit court ruled in Gavigan's favor in his suit against Pippen, as set forth in the court's order entered on June 5, 2008.  The order provided as follows:

> The parties came hereto for trial on May 1, 2008.  The Court, having heard evidence, doth ADJUDGE, ORDER, and DECREE that the Plaintiff shall recover on his claim under the Virginia Consumer Protection Act and for improper conduct as set out in § 54.1-1120(7) of the Code of Virginia.[3]

---

[2] Code § 54.1-1118 of the CTRA defines "[i]mproper or dishonest conduct" as "includ[ing] only the wrongful taking or conversion of money, property or other things of value which involves fraud, material misrepresentation or conduct constituting gross negligence, continued incompetence, or intentional violation of the Uniform Statewide Building Code (§ 36-97 et seq.).  The term 'improper or dishonest conduct' does not include mere breach of contract."

[3] Code § 54.1-1120(A)(7) states:

> A claimant shall not be denied recovery from the [CTRA] Fund due to the fact the order for the judgment filed with the verified claim does not contain a specific finding of 'improper or dishonest conduct.'  Any language in the order which supports the conclusion that the court found that the conduct of the regulant

- 3 -

> The Court doth enter judgment in favor of the Plaintiff
> against the Defendant in the sum of $14,000.00 compensatory
> damages and $5,000.00 attorney's fees, with interest from the entry
> of this Order, and all costs expended herein in the sum of $41.00.

Following unsuccessful efforts to satisfy his judgment against Pippen, Gavigan filed a

verified claim[4] with the Board, pursuant to the CTRA, seeking payment upon the judgment for

his actual damages in the sum of $14,000, and attorney's fees in the sum of $5,000.[5]

The Virginia Department of Professional and Occupational Regulation (Department)

conducted an investigation into Gavigan's CTRA claim and held an "informal fact-finding

---

> involved improper or dishonest conduct may be used by the Board
> to determine eligibility for recovery from the Fund.

[4] A claimant "verifie[s]" a claim under the CTRA by providing the Board certain information regarding claimant's efforts to satisfy the judgment upon which the claimant is seeking payment from the Board. Code § 54.1-1120(A)(6).

[5] Setting forth the general parameters for a CTRA claim, Code § 54.1-1120(A) states, in relevant part:

> Whenever any person is awarded a judgment in a court of
> competent jurisdiction in the Commonwealth of Virginia against
> any individual or entity which involves improper or dishonest
> conduct occurring (i) during a period when such individual or
> entity was a regulant and (ii) in connection with a transaction
> involving contracting, the claimant may file a verified claim with
> the [Board] to obtain a directive ordering payment from the Fund
> of the amount unpaid upon the judgment subject to [certain
> conditions and limitations].

A claimant is defined as "any person with an unsatisfied judgment involving residential construction against a regulant, who has filed a verified claim under this Act." Code § 54.1-1118. Code § 54.1-1120(A)(4) then states, in relevant part, that "[t]he claimant shall be . . . an individual whose contract with the regulant involved contracting for the claimant's residence(s) located in the Commonwealth." A regulant, in turn, is defined as including, among others, "any individual . . . licensed by the Board for Contractors." Code § 54.1-1118.
Further, pursuant to Code § 54.1-1123(A), "[t]he maximum claim of one claimant against the [CTRA] Fund based upon an unpaid judgment arising out of the improper or dishonest conduct of one regulant in connection with a single transaction involving contracting, is limited to $20,000, regardless of the amount of the unpaid judgment of the claimant."

conference."[6]  A Board member conducted the hearing and received documentary evidence from the Department, Gavigan, and Pippen, and heard testimony from both Gavigan and Pippen.  The Board member subsequently issued a report to the full Board containing a summary of the hearing, her findings of fact, and her recommendation to the Board to deny the claim.  In support of the recommendation, the Board member found, *inter alia*, the following:  (i) the money paid to Pippen under his contract with Gavigan for the construction of the basement apartment at Gavigan's residence came from Gavigan's mother-in-law, not Gavigan; and (ii) Gavigan's claim included a request for "reimbursement of [his] personal time" expended toward "complet[ing] the project"; and (iii) Gavigan's circuit court judgment was not an award of damages "constitut[ing] actual monetary loss to [him]," as required by Code § 54.1-1123(C) to establish a compensable claim under the CTRA.  A majority of the Board voted to accept the Board member's findings and recommendation, and entered an order on October 6, 2009 denying Gavigan's claim.

Gavigan appealed the Board's decision to the circuit court, asserting the decision was "not supported by substantial evidence," and "not within the scope of legal authority of the [Board]."  On the record presented, Gavigan argued, the Board had a duty to "issue a directive ordering payment [to him] from the fund," as provided under Code § 54.1-1122, because he had complied with the requirements of the CTRA and presented a compensable claim for payment of

---

[6] The Board is a separate agency within the Department, and the Department conducts investigations in matters involving the various agencies under its authority.  Code § 54.1-1122(A) specifically authorizes the Department to conduct an "informal fact-finding conference pursuant to § 2.2-4019 of the Administrative Process Act (§ 2.2-4000, et seq.)" when considering a claimant's verified claim under the CTRA; and Code § 54.1-1122(B) provides that, "[i]f the Board finds there has been compliance with the required conditions, the Board shall issue a directive ordering payment from the fund to the claimant the amount remaining unpaid on the judgment, subject to the limitations set forth in § 54.1-1123."

$14,000 for actual monetary loss, and $5,000 in attorney's fees, on his unsatisfied judgment against Pippen.

In response, the Board argued it made a finding that "no amount of Gavigan's judgment constituted actual monetary loss to Gavigan" because "Gavigan's mother-in-law . . . paid for the work performed by Pippen," and the court was bound by that finding, which negated Gavigan's claim.

By order dated April 8, 2010, the circuit court reversed the Board's decision and ordered the matter remanded to the Board for payment to Gavigan. As explained in the order, the court determined from the record presented on appeal that Gavigan's unsatisfied judgment from the underlying litigation against Pippen did "not present interest, punitive damages, exemplary damages, or any amounts that [did] not constitute actual monetary loss to [Gavigan]." The court further determined that the judgment represented an award for (i) actual monetary loss in the sum of $14,000, described in the judgment as "compensatory damages," arising from Pippen's "improper conduct" as defined in the CTRA, and (ii) attorney's fees in the sum of $5,000, both of which sums were compensable under the CTRA. Also, the court specifically rejected the Board's conclusion that Gavigan did not suffer any loss under his contract with Pippen based on the Board's finding that Gavigan's in-laws, and not Gavigan, paid Pippen. The court concluded the evidence was undisputed that "the in-laws were providing financing only." In other words, "[t]hey were acting as the bank for construction financing, but the house belonged to Gavigan."

The Board's appeal to this Court followed.

## II. ANALYSIS

### A.

The Virginia Administrative Process Act authorizes judicial review of agency decisions. See Code § 2.2-4027. Under settled principles, the burden is upon the party appealing such a

decision to demonstrate error. Avante at Roanoke v. Finnerty, 56 Va. App. 190, 197, 692 S.E.2d 277, 280 (2010); Carter v. Gordon, 28 Va. App. 133, 141, 502 S.E.2d 697, 700-01 (1998). "Our review is limited to determining (1) '[w]hether the agency acted in accordance with law;' (2) '[w]hether the agency made a procedural error which was not harmless error;' and (3) '[w]hether the agency had sufficient evidential support for its findings of fact.'" Avante at Roanoke, 56 Va. App. at 197, 692 S.E.2d at 280 (quoting Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988)).

On factual issues, the determination to be made by the reviewing court is "'whether substantial evidence exists in the agency record to support the agency's decision. The reviewing court may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion.'" John Doe v. Virginia Bd. of Dentistry, 52 Va. App. 166, 175, 662 S.E.2d 99, 103 (2008) (quoting Johnston-Willis, Ltd., 6 Va. App. at 242, 369 S.E.2d at 7). See Virginia Real Estate Comm'n v. Bias, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983) ("The phrase 'substantial evidence' refers to 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938))).

However, "[a]n agency's legal interpretations of statutes is accorded no deference because we have long held that pure statutory interpretation is the prerogative of the judiciary, and thus, Virginia courts do not delegate that task to executive agencies." Commonwealth *ex rel.* Va. State Water Control Bd. v. Blue Ridge Envtl. Def. League, Inc., 56 Va. App. 469, 481, 694 S.E.2d 290, 296 (2010) (citations and internal quotation marks omitted); see Virginia Dep't of Health v. NRV Real Estate, LLC, 278 Va. 181, 185, 677 S.E.2d 276, 278 (2009) ("Although decisions by administrative agencies are given deference when they fall within an area of the agency's specialized competence, issues of statutory interpretation fall outside those areas and

are not entitled to deference on judicial review." (citation omitted)).  Accordingly, we conduct a *de novo* review of the agency's interpretation of the statutes in dispute.  Id.

B.

Code § 54.1-1123(C) of the CTRA states:

> Excluded from the amount of any unpaid judgment upon which a claim against the [CTRA] Fund is based shall be any sums representing interest, or punitive or exemplary damages, or any amounts that do not constitute actual monetary loss to the claimants.  Such claim against the Fund may include court costs and attorney's fees.

The Board argues the circuit court erred in concluding that Gavigan's award of "compensatory damages" in the sum of $14,000, as set forth in his unsatisfied judgment from the underlying litigation, constituted an award for "actual monetary loss" under Code § 54.1-1123(C).  According to the Board, it was entitled, through its informal fact-finding proceeding, to make an independent assessment of Gavigan's action against Pippen resulting in the unsatisfied judgment, and its findings from that proceeding supported its determination that Gavigan suffered no actual monetary loss arising from Pippen's improper or dishonest conduct in relation to his residential construction contract with Gavigan.  From our review of Gavigan's action against Pippen, we reject the Board's argument and conclude the circuit court correctly determined that Gavigan's judgment for "compensatory damages" constituted an award for actual monetary loss.

The Board is correct in asserting that an award for "compensatory damages" may include certain damages in addition to, or apart from, actual monetary loss.  "Actual or compensatory damages, the terms being synonymous, are damages in satisfaction of, or in recompense for, loss or injury sustained.  Either term covers all loss recoverable as a matter of right and includes all damages other than punitive or exemplary damages."  News Leader Co. v. Kocen, 173 Va. 95, 108, 3 S.E.2d 385, 391 (1939) (citation and internal quotation marks omitted).  See Fleming v.

- 8 -

Moore, 221 Va. 884, 894, 275 S.E.2d 632, 638-39 (1981) (holding that actual or compensatory damages include both pecuniary and non-pecuniary damages); see also Bohac v. Dep't of Agric., 239 F.3d 1334, 1341 (Fed. Cir. 2001) ("It is well-established that the term 'compensatory damages' includes non-pecuniary damages such as pain and suffering.").

It is also true, however, that "'no court can base its judgment or decree upon facts not alleged or upon a right which has not been pleaded and claimed.'" Board of Supervisors v. Robertson, 266 Va. 525, 537-38, 587 S.E.2d 570, 578 (2003) (quoting Ted Lansing Supply Co. v. Royal Aluminum & Constr. Corp., 221 Va. 1139, 1141, 277 S.E.2d 228, 229 (1981)); see Potts v. Mathieson Alkali Works, 165 Va. 196, 207, 181 S.E. 521, 525 (1935)). Therefore, "'[a] litigant's pleadings are as essential as his proof, and a court may not award particular relief unless it is substantially in accord with the case asserted in those pleadings.'" Robertson, 266 Va. at 538, 587 S.E.2d at 578 (quoting Jenkins v. Bay House Assoc., 266 Va. 39, 43, 581 S.E.2d 510, 512 (2003)). Furthermore, "[c]ourts are presumed to act in accordance with the law and orders of the court are entitled to a presumption of regularity." Napert v. Napert, 261 Va. 45, 47, 540 S.E.2d 882, 884 (2001) (citing Beck v. Semones' Adm'r, 145 Va. 429, 442, 134 S.E. 677, 681 (1926)).

In his complaint against Pippen, Gavigan alleged facts only in the nature of actual monetary loss arising from Pippen's alleged improper or dishonest conduct in relation to the residential construction contract, as contemplated by the CTRA. More specifically, Gavigan alleged that, as a result of such wrongful conduct by Pippen, as defined in Code § 54.1-1118, Gavigan was required to "remove, rework and replace at great expense much of what little [Pippen] accomplish[ed]" and that Pippen had "not earned and [was] not entitled to the moneys advanced to him," but he "failed and refuse[d] to return [Gavigan's] money to him." Thus, based on those allegations, the trial court's award of $14,000 in "compensatory damages" to

- 9 -

Gavigan, as set forth in his unsatisfied judgment, was presumptively limited to an award for actual monetary loss—i.e., an award "substantially in accord with the case asserted in [Gavigan's] pleadings." Robertson, 266 Va. at 538, 587 S.E.2d at 578 (citation and internal quotation marks omitted). And there is nothing in the record from the underlying litigation to indicate the award was for any other kind of loss or damage.[7] In addition, as expressly stated in the judgment, the trial court found that Gavigan's damages arose from the kind of "improper conduct" the CTRA was designed to redress.

While the Board is authorized under Code § 54.1-1122 of the CTRA to conduct an informal fact-finding conference to determine whether a claimant has qualified for payment on an unsatisfied judgment, the Board is not entitled under the CTRA to ignore or otherwise reject a circuit court's findings in the underlying litigation, as the Board has done in the instant case.

---

[7] The Board essentially contends the CTRA is limited to payment for restitutionary type damages in the form of "out-of-pocket loss." See Baylor Univ. v. Sonnichsen, 221 S.W.3d 632, 636 (Tex. 2007) (explaining that an award of "[o]ut-of-pocket damages" derives from a "restitutionary theory"). If so, the payment would only be for the purpose of "restor[ing] to [claimant] any benefit that he has conferred on the other party." 24 Richard A. Lord, Williston on Contracts § 64:2, at 21 (4th ed. 2002). See 1 Dan B. Dobbs, Law of Remedies § 3.1, at 278 (2d ed. 1993) ("Damages differs from restitution in that damages is measured by the plaintiff's loss; restitution is measured by the defendant's unjust gain."). That is not our reading of the CTRA. The legislature did not use the term "restitution" anywhere in this statutory scheme, as it has in other statutes. See, e.g., Code § 6.2-1626 (authorizing Attorney General to seek "damages and such other relief allowed by law, including restitution to the extent available to borrowers," in the context of certain actions against mortgage lenders and brokers); Code § 8.2-718 (setting forth under the Uniform Commercial Code buyer's right to "restitution" of sums paid to seller who has withheld delivery of goods); Code § 59.1-508.9 (setting forth under the Uniform Computer Information Transactions Act licensee's right to damages for breach of contract "plus restitution"). Instead, under Code § 54.1-1123(C) of the CTRA, the legislature provided for payment "constituting actual monetary loss to the claimants." We thus view this payment on claimant's unsatisfied judgment as compensation for claimant's "'reliance interest,' which is his interest in being reimbursed for loss caused by reliance on the contract [with the "regulant," i.e., the bad contractor] by being put in as good a position as he would have been in had the contract not been made." 24 Williston § 64:2, at 21. As such, we further note that this does not include reimbursement for claimant's "'expectation interest,'" meaning his interest in receiving the "benefit of his bargain by being put in as good a position as he would have been in had the contract been performed." Id.

Had the legislature intended to allow the Board to exercise such discretion, it could have done so, but did not. See Hollowell v. Va. Marine Res. Comm'n, 56 Va. App. 70, 89, 691 S.E.2d 500, 510 (2010) ("[H]ad the legislature intended to give the VMRC unlimited power to prohibit crab dredging for multiple seasons at a time without the necessity of further action or public hearings . . . it would have done so by using very plain simple language to that effect." (internal quotation marks omitted)); Reynolds v. Commonwealth, 30 Va. App. 153, 160, 515 S.E.2d 808, 811-12 (1999) ("If the legislature had intended that operators undergo a forty-hour training program for each individual type of breath test equipment, then it would have said so in the statute."). That is not to say the Board is without authority to take evidence on the issue of damages and make independent findings of fact when the exact nature of the damage award recited in the unsatisfied judgment cannot be determined on the record from the circuit court. However, that is not the case here.

### III. CONCLUSION

For the reasons stated above, we affirm the circuit court in its reversal of the Board's decision denying Gavigan's CTRA claim on his unsatisfied judgment from the underlying litigation. We further remand this case to the circuit court and order that it be remanded to the Board with the directive to pay Gavigan the sum of $14,000 in damages for actual monetary loss, and the sum of $5,000 for attorney's fees, from the CTRA fund.

Affirmed and remanded.