## CIRCUIT COURT OF FAIRFAX COUNTY

Hop and Wine Beverages, L.L.C.

v.

Virginia Dept. of
Alcoholic Beverage Control,
Dogfish Head Craft Brewery, Inc.,
and Specialty Beverage Co., Inc.

July 18, 2012

Case No. CL-2011-9788

By Judge Jonathan C. Thacher

This matter came before the Court on February 16, 2012, upon Petitioner Hop and Wine Beverage's appeal of the Virginia Alcohol Beverage Control Board's decision. After considering the pleadings and briefs filed by counsel and oral argument, the Court took the matter under advisement. For the reasons set forth below, Petitioners' motion is granted in part and denied in part.

### I. *Background*

This is a petition for appeal from a Virginia Alcoholic Beverage Control Board ("ABC Board") decision that the beer distribution agreement between Petitioner Hop and Wine Beverages, L.L.C. ("Hop and Wine") and

Respondent, Dogfish Head Craft Brewery, Inc. ("Dogfish") did not include the exclusive rights to distribute beer in certain disputed territories: Orange County, Page County, Hanover County, Henrico County, Spotsylvania County, or the City of Richmond (the "Disputed Territories"). The Board ruled instead that the valid beer distribution agreement between Dogfish and Respondent Specialty Beverage Company, Inc. ("Specialty") included exclusive rights to distribute beer in the Disputed Territories (excluding Orange County). Beer distribution agreements, including exclusive territory assignments, are governed by the Beer Franchise Act, Va. Code § 4.1-500, *et seq. See specifically* Va. Code §§ 4.1-503, 4.1-505, and 4.1-506. Importantly, under the act, a distribution agreement, including territory assignments, need not be in writing. Conflicting representations of oral agreements and the veracity of certain communications between Hop & Wine and Dogfish form the basis for this dispute.

## II. *Facts*

The following facts are not in dispute. Dogfish is a Delaware brewery producing a number of beer products offered for sale in Virginia. Specialty and Hop & Wine are both Virginia beer wholesalers having entered into separate agreements with Dogfish for the distribution of Dogfish brands. Neither of the agreements between the parties as they pertain to the Disputed Territories are in writing. The distribution agreement between Dogfish and Hop & Wine was entered into in 1997; the distribution agreement between Dogfish and Specialty was entered into in 2004.

Under the distribution agreement between Hop & Wine and Dogfish, Hop & Wine did not distribute in the Disputed Territories during either the first eight months of 1998 or in the entirety of 2002. In 2004, Dogfish asked Petitioner for a written description of the counties in which Petitioner Hop & Wine was legally selling Dogfish's beer. Hop & Wine responded with those territories Petitioner believed it was assigned; none of the Disputed Territories were listed.

## III. *Procedural History*

In 2008, Hop & Wine asserted purported exclusive rights to sell beer in the Disputed Territories to the Tax Management Department of the Virginia Department of Alcoholic Beverage Control Board (the "ABC Board"). Tax Management operates a website displaying the distribution territories of beer wholesalers. According to the record, the ABC Board had on file at the time of Hop & Wine's request in 2008 documents entitled "Attachment A" and "Attachment B." Attachment A is a purported written beer distribution authorization executed by a Dogfish representative on October 29, 1997, for the benefit of Hop & Wine. Attachment B is a purported written

declaration of designated territories which includes the Disputed Territories also dated October 29, 1997. Attachments A and B are procedural filings with the ABC Board; they do not appear to be contracts. Attachment A is unilaterally endorsed by Dogfish; Attachment B is unilaterally endorsed by Hop & Wine. The address for Hop & Wine is different on each. Upon Hop & Wine's request, Tax Management changed their website display to reflect Hop & Wine's exclusive rights to distribute in the Disputed Territories. Both Specialty and Dogfish protested, claiming the rights to distribute in the Disputed Territories were properly set forth in the 2004 distribution agreement between Specialty and Dogfish. In the Board's October 29, 2008, letter, ABC Tax Management referred the dispute to the ABC's Hearing and Appeals Division._

In accordance with the Board's referral, a hearing panel heard evidence regarding the dispute on May 12-13, 2009. An Initial Decision was issued by the Hearing Panel on January 6, 2010, resolving the question of rights to distribute in the disputed territories in favor of Specialty and Dogfish. Hop and Wine appealed the Initial decision contesting, among other things, the failure of the Panel to afford the opportunity for closing argument. Hop & Wine simultaneously filed a Motion to Remand in that respect. The Board granted the Motion to Remand on June 10, 2010, instructing the Hearing Panel to hear closing arguments. On August 12, 2010, a Second Initial decision was issued by the Hearing Panel, again in favor of Specialty and Dogfish. According to the record, the Hearing Panel's Second Initial Decision reasoned that certain procedural defaults on the part of Hop & Wine amounted to a release of the disputed territory.

On May 26, 2011, the ABC Board issued its Final Decision in favor of Specialty and Dogfish. In its Final Decision and Order, the ABC Board outlines its reasoning as follows:

> the only evidence of a "meeting of the minds" with respect to the territory assigned to the agreement between Dogfish Head Craft Brewery and Hop and Wine Beverages, L.L.C., is the evidence surrounding the exchange of correspondence between the parties in July and August 2004. While there is other, often conflicting evidence of each party's understanding of the assigned sales territory, the 2004 communication represents the only evidence of a territory acknowledged by both parties. Based on the 2004 correspondence, the Board finds that the Hop and Wine Beverage, L.L.C., sales territory does not include any of the disputed jurisdictions.

Bd. Fin. Decis. at 1.

Also as part of the ABC Board's Final Decision, the ABC Board states that the question of procedural defaults forming the basis of the Hearing

Panel's Second Initial Decision need not be considered in light of the email correspondence evidence. In the instant matter, Hop & Wine appeals the ABC Board's May 26, 2011, Final Decision.

## IV. *Analysis*

### A. *Standard of Review*

It is well established that administrative agency decisions are given deference upon appellate review when they fall within an area of agency specialty. *Commonwealth, ex rel. Virginia State Water Control Bd. v. Blue Ridge Environmental Defense League, Inc.*, 56 Va. App. 469, 480-81, 694 S.E.2d 290 (2010). In setting forth the Circuit Court's authority to review administrative appeals under VAPA, Va. Code § 2.2-4027 instructs that, when an agency appeal presents an issue of fact, the duty of the court shall be limited to ascertaining whether there was "substantial evidence" which the agency, as the trier of fact, could reasonably find them as it did. *Virginia Dep't of Health v. NRV Real Estate*, 278 Va. 181, 185, 677 S.E.2d 276 (2009).

Va. Code § 2.2-4027 pertinently states:

> The burden shall be upon the party complaining of agency action to designate and demonstrate an error of law subject to review by the court. Such issues of law include: (i) accordance with constitutional right, power, privilege, or immunity, (ii) compliance with statutory authority, jurisdiction limitations, or right as provided in the basic laws as to subject matter, the stated objectives for which regulations may be made, and the factual showing respecting violations or entitlement in connection with case decisions, (iii) observance of required procedure where any failure therein is not mere harmless error, and (iv) the substantiality of the evidentiary support for findings of fact. . . .
>
> When the decision on review is to be made on the agency record, the duty of the court with respect to issues of fact shall be limited to ascertaining whether there was substantial evidence in the agency record upon which the agency as the trier of the facts could reasonably find them to be as it did.

Commensurate to ascertaining whether the record contains "substantial evidence" to support the agency's findings of fact, the court can only set aside agency action that is "arbitrary or capricious." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513, 129 S. Ct. 1800, 173 L. Ed. 2d 738 (2009). An agency rule is arbitrary or capricious if the agency entirely failed to

consider an important aspect of the problem, offer an explanation for its decision that goes against the evidence, or the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983).

Where issues involve interpretation of the law, statutory, common, or constitutional, such interpretations fall outside of an agency's special area of competence and are squarely within the purview of circuit courts to adjudicate on appeal *de novo*. Va. Code § 2.2-4027; *see also NRV Real Estate*, 278 Va. at 185; *Laurels of Bon Air, L.L.C. v. Medical Facilities of Am.*, 51 Va. App. 583, 612, 659 S.E.2d 561 (2008). In such instances, the court should not abdicate its judicial function and "merely rubber-stamp an agency determination." *Volkswagen of Am. v. Quillian*, 39 Va. App. 35, 50, 569 S.E.2d 744 (2002), *rev'd in part on other grounds*, 266 Va. 444, 587 S.E.2d 526 (2003).

However, if a different interpretation of the law by the administrative agency could not have led to a different result, the agency's interpretation must be upheld. *See Retirement System v. Cirillo*, 54 Va. App. 193, 202, 676 S.E.2d 368 (2009). Finally, when reviewing mixed questions of law and fact, the circuit court on appeal should give deference to the administrative agency's decision. *See Browning-Ferris Industries v. Residents Involved in Saving the Environment, Inc.*, 254 Va. 278, 284, 492 S.E.2d 431 (1997).

The Appellees severally argue the instant appeal presents mixed questions of law and fact. Specifically, they argue that the ABC Board looked toward the Disputed Territories to determine if a distribution agreement existed there between Hop &Wine and Dogfish. The crux of Appellees' arguments center on a belief that, based on the findings of the ABC Board, no agreements existed between Hop & Wine and Dogfish with respect to each of the Disputed Areas. Thus, Appellees aver, Hop & Wine cannot claim presumptions reserved for distributors under the Beer Franchise Act because Hop & Wine did not exist as a distributor in those areas.

Appellees finally assert that the circumstances pertaining to the existence of oral agreements encompassing the Disputed Territories existing between Hop & Wine and Dogfish predating any such agreement between Dogfish and Specialty would require adjudication of fact and the weighing of evidence. As such, if this analysis were correct, the ABC Board's opinion would be entitled to substantial evidence deference. *Browning-Ferris*, 254 Va. at 284. Upon review of the Beer Franchise Act and a reading of the ABC Board's opinion, the Court disagrees.

A reading of the Beer Franchise Act's language reveals that it is incorrect to look first to a specific county as an individual territory and ask whether an agreement existed there between the parties in question. Va. Code § 4.1-503 reads:

Each brewery which enters into an agreement with a beer wholesaler shall designate a sales territory for that wholesaler which is applicable to the agreement. No brewery shall enter into any agreement with more than one beer wholesaler for the purpose of establishing more than one agreement for its brands of beer in any territory. However, the existence of more than one such agreement as a result of a sale of a brewery as contemplated by § 4.1-504 shall not be prohibited. Each brewery shall notify the Board in writing of all designations of sales territories, the identity of the wholesaler appointed to serve such territory, and a statement of any variations which exist in such designated territory with regard to a particular brand. Redesignations shall be reported to the Board within thirty days.

The language of the "Sales Territory" section of the Beer Franchise Act is clear that an agreement must exist between a brewery and a distributor and, commensurate to that agreement, a sales territory is designated for the distributor. Whether a wholesaler has distribution rights to a certain county is, therefore, not a matter of asking if an agreement exists for each county. Rather, it is a matter of determining the terms of the parties' singular agreement, specifically, if the county is included as part of the established sales territory.

The opinion of the ABC Board plainly states "[t]he parties agree that a distribution agreement exists between Hop and Wine Beverage, L.L.C., and Dogfish Head Craft Brewery," and that "the sales territory does not include any of the disputed jurisdictions." ABC Bd. Final Decision and Order, 1, May 26, 2011. The ABC Board, thus, did not look for the existence of an agreement in each of the disputed territories separately, as asserted by the Appellees, but found a singular agreement to exist between the parties and then analyzed whether the disputed territories were part of the terms of that agreement. The issues before the Court are therefore not the particular issues of mixed law and fact stated by the Appellees, which would so easily afford the parties deferential review.

Petitioner does not challenge any specific factual findings of the ABC Board, but instead claims that (1) it was not afforded the proper evidentiary presumptions due under the Beer Franchise Act and (2) that the ABC Board did not properly assign the burden of proof pursuant to the Virginia Administrative Process Act (VAPA). Thus, Petitioner argues, the issues at bar are matters of statutory interpretation, which are purely matters of law within the purview of the Circuit Court. The Court agrees.

Because the Court does not need to weigh evidence to determine the existence of an agreement and the only issues before the Court involve the correct application of statutory presumptions and burdens of proof, the

Court needs only to determine matters of law. The Court therefore must review the case *de novo*, and the burden is on Petitioner Hop & Wine to demonstrate an error of law subject to review by this Court. *See Real Estate Commission v. Bias*, 226 Va. 264, 270, 308 S.E.2d 123 (1983).

## B. *Burden of Proof at Administrative Hearing*

Petitioner argues that, procedurally, the burden of proof should have been placed on Dogfish and Specialty pursuant to the manner in which the dispute was brought before the ABC Board for review. In Virginia administrative hearings, the burden of proof in a formal hearing shall be placed upon the "proponent or applicant." Va. Code § 2.2-4020(C). Hop & Wine claims that, because Dogfish and Specialty were the parties seeking to change the ABC Tax Management website listing, Dogfish and Specialty were the proponents or applicants seeking a change from the ABC Board. Appellees, conversely, state that it was Hop & Wine who brought the matter before the ABC Board, making Hop & Wine the applicant and bearer of the burden of proof.

Under the Beer Franchise Act, a dispute may be brought before the ABC Board "upon petition by any wholesaler or brewery, or upon its own motion if it has reasonable grounds to believe a violation has or may have occurred." Va. Code § 4.1-509. As seen in the letter dated October 29, 2008, from the ABC Board to the presidents of Hop & Wine, Dogfish, and Specialty, this matter was referred by the ABC Board's own motion to the Hearings and Appeals Division. (Appellant Mem. Ex 1 at 2.) As such, the Court holds that neither Hop & Wine, nor Dogfish and Specialty, are the proponent or applicant in this case. The ABC Board thus did not err in not assigning a procedural burden of proof to either side.

## C. *Statutory Presumption Regarding Petitioner's Rights in the Disputed Territories*

At issue is whether the ABC Board failed to afford Hop & Wine a presumption of law, not just with respect to whether an agreement had been made, but also to the terms of the agreement, specifically, if Attachment A and Attachment B, filed with the ABC Board's Tax Management Department, should have counted as *prima facie* evidence of the sales territory awarded to Hop & Wine in its 1997 distribution agreement with Dogfish. This presumption of law should have been afforded to Hop & Wine because (1) the Beer Franchise Act generally favors wholesalers over breweries once franchise rights have been established, and (2) a reading of certain statutory provisions contained in the Beer Franchise Act indicate that a presumption of law with respect to the appointments contained on Attachment B was warranted.

When reviewing an agency decision, the Court must consider the "purposes of the basic law under which the agency acted." *Virginia Imports, Ltd. v. Kirin Brewery of Am., L.L.C.*, 41 Va. App. 806, 821, 589 S.E.2d 470 (2003). A reading of the Beer Franchise Act demonstrates an overriding purpose toward protecting the interests of beer wholesalers once the wholesaler has established a distribution agreement with a brewery. In the Commonwealth, due to the similarities between the two statutes, the Beer Franchise Act, even if it does not contain an express enumeration of purposes like the Wine Franchise Act, can be construed as having the same purposes expressed in the Wine Franchise Act. *Virginia Imports*, 41 Va. App. at 822. In *Virginia Imports*, while analyzing whether the termination of a wholesaler was proper, the court stated that the specific enumeration of purposes contained in the Wine Franchise Act also applied to the Beer Franchise Act and these purposes set out to protect the interests of wholesalers from breweries after a distribution agreement had been established. *Id.* To act in accordance with the purposes of the Beer Franchise Act, the ABC Board and the Court should tip the scale in favor of the wholesaler over the brewery in continuing the existence of valid distribution agreements. While the rule from *Virginia Imports* does not equate to providing Hop & Wine a full presumption, Petitioner argues all inferences should generally be granted in favor of Hop & Wine over Dogfish.

Additionally, certain statutes in the Beer Franchise Act should have afforded Hop & Wine a presumption of law with respect to the territory assignments listed on the Attachment B form filed with the ABC Board in 1997. The Beer Franchise Act defines "agreement" as "a commercial relationship, not required to be evidenced in writing, of definite or indefinite duration, between a brewery and beer wholesaler pursuant to which the wholesaler has been authorized to distribute one or more of the brewery's brands of beer." Va. Code § 4.1-500. Additionally, any sale or shipment of a product by a brewery or payment for a shipment by a wholesaler constitutes *prima facie* evidence of an agreement. *Id.*

In this case, it is undisputed that a distribution agreement existed between Hop & Wine and Dogfish beginning in 1997. *See* ABC Bd. Final Decision at 1. Immediately after the meeting between Hop & Wine and Dogfish in the fall of 1997, Hop & Wine began to distribute Dogfish products across the Northern Virginia area.

Va. Code § 4.1-503 also indicates that, when an agreement is formed with a wholesaler, the brewery "shall designate a sales territory for that wholesaler which is applicable to that agreement." Va. Code § 4.1-503. The same section also states that "[e]ach brewery shall notify the board in writing of all designations of sales territories." *Id.* Thus, if there is an agreement, a specific sales territory would have to exist with respect to the agreement. It cannot be nebulous. Additionally, while an agreement itself need only be oral, the specific sales territory must be submitted to the

ABC Board in writing. The primary way breweries and wholesalers fulfill this obligation is through the filing of Attachments A and B. Attachments A and B are attachments to an importer's license agreement. The ABC Board uses these attachments to maintain and update the territory listing on the ABC Tax management website. *See* Va. Dep't of Alcoholic Beverage Control, "Applicant's for Importer's Licenses," Attachments A and B at 5-6, *available at* http://www.abc.state.va.us/enforce/forms/impoter.pdf. When § 4.1-500 and § 4.1-503 are read together and the general inferences are granted in favor of Hop & Wine as a wholesaler, as a matter of law, the ABC Board should have afforded Hop & Wine a presumption that not only an agreement existed between Hop & Wine and Dogfish, but also that the counties listed on Attachment B accurately reflected the terms of that agreement with respect to the designated sales territory. *See also* The Hon. David D. Albo, 2006 WL 1977474 (VA. A.G. June 1, 2006) (advisory opinion stating that the filing of Attachments A and B along with a shipment or purchase of product in the sales territory "establish a presumption that the protections of the Wine and Beer Franchise Act apply to the original wholesaler appointments and shift the burden of proof on that issue to the winery, brewery, or authorized representative.").

It is unclear from the opinion of the ABC Board if this presumption of law was applied in this case. The opinion makes no mention of either Attachment A or Attachment B or whether the burden of proof was assigned to Dogfish and Specialty. ABC Bd. Final Decision at 1. Based on the evidence submitted, it is possible that the ABC Board applied the proper presumption to Hop & Wine, but found the evidence presented by Dogfish and Specialty convincing enough to satisfy their burden of proof.

In Virginia, administrative opinions must "briefly state or recommend the findings, conclusions, reasons, or basis therefore upon the record and relevant to the basic law under which the agency is operating." Va. Code § 2.2-4020(E). A failure to do so requires remand. *Harrison v. Ocean View Fishing Pier, L.L.C.*, 50 Va. App. 556, 575-76, 651 S.E.2d 421 (2007).

Here, because the opinion does not state what, if any, presumptions of law were applied, the ABC Board either (1) failed to afford Hop & Wine a warranted statutory presumption, which would be a mistake of law and require remand or (2) applied the appropriate presumption but failed to state the basic law under which they made their decision in its ruling, which would constitute a violation of Va. Code § 2.2-4020(E). This would also require remand.

## V. *Conclusion*

The case before the Court presents issues of law and statutory interpretation. The Court is therefore required to review the case *de novo*, affording no deference to the legal interpretations of the ABC Board. Here,

the ABC Board should have granted Hop & Wine a presumption of law with respect to the listing of those counties enumerated on Attachment B's designation of sales territory. Because it is unclear if the Board applied this presumption and for the reasons set forth above, the case is remanded to the ABC Board to reevaluate the factual findings after applying this standard.

For the foregoing reasons, Petitioner Hop and Wine Beverage's appeal of the Virginia Alcohol Beverage Control Board's decision is remanded.